HENRY GAMBLE v. ALEXANDER FOLSOM, BENJAMIN W. ARNOLD AND JESSE HOYT.

*Pine land contract—Assignment as security—Forfeitures—Laches.*

G. made a contract with H. for two parcels of pine lands and at the same time contracted with F. & A. to sell them lumber from one of the parcels if they would advance him money to make payment. The first contract was not to be assigned without H.'s consent, on

pain of forfeiture, but with such consent it was assigned to F. & A., as security, so far as related to the parcel from which their lumber was to be taken. The lumber contract was extended and G. sought to sell the lumber from the other parcel, first to F. & A., and afterwards to Y & Z.; but an arrangement with Y. & Z. was prevented by F. & A., who claimed that their assignment covered both parcels. Shortly afterwards H.'s agent notified G. that the land contract was forfeited, and having done so conveyed one parcel to F. and contracted to sell him the other, for the amount remaining unpaid on F.'s contract. G then filed a bill for specific performance, impleading F. & A. with H., and obtained a decree from which only F. & A. appealed. *Held* that the rights of F. & A. were confined to the first parcel; that as the forfeiture was evidently declared for the purpose of enabling F. to get the land, and as F. & A. were bound to use their security for G.'s benefit, subject only to their own claim against him, and could not obtain a complete title without leaving him a right of redemption, the decree would not be disturbed.

Laches cannot be imputed to one who begins proceedings as soon as he is in legal condition to do so, as where one awaits a discharge in bankruptcy.

Appeal from Ogemaw. Submitted June 28. Decided October 4.

BILL for discovery, accounting, leave to redeem, and specific performance. Defendants appeal. Affirmed.

*Tarsney, Tennant & Weadock* cited for the right of specific performance irrespective of the lapse of time: *Wallace v. Pridge* 4 Mich. 570; *Morris v. Hoyt* 11 Mich. 9; *Richmond v. Robinson* 12 Mich. 193; time is not essential if it would be unconscionable to allow it to be so: *Converse v. Blumrich* 14 Mich. 115; and a contract cannot be forfeited without reasonable notice (*Hogsett v. Ellis* 17 Mich. 351); and the lapse of a reasonable time thereafter: *Fitzhugh v. Maxwell* 34 Mich. 138; enforcement of stipulated damages is not the enforcement of specific performance: *Jaquith v. Hudson* 5 Mich. 123; *Davis v. Freeman* 10 Mich. 188; *Daily v. Litchfield* id. 29; the right to make payment on a contract for the sale of personal property is not forfeited by neglect to pay on the day fixed for it: *Preston v. Whitney* 23 Mich. 260; *Johnston v. Whittemore* 27 Mich. 463; notice of the rescission of a contract

for realty without offering to repay the amount paid on the purchase price will not entitle the vendor to recover: *Armstrong v. Pierson* 5 Ia. 317; *Young v. Daniels* 2 Ia. 126; where a vendee in possession with the vendor's con-sent makes improvements on the property, the vendor can-not recover possession in equity : *Rummington v. Kelley* 7 Ohio 387; refusal to perform gives the other party the option to rescind the contract by replacing the parties in their former condition : *Brink v. Morton* 2 Ia. 411.

*Holmes, Collins & Stoddard* for defendants. Specific performance is no matter of right, but is in the sound dis-cretion of the court: Story's Eq. (12th ed.) §§ 742, 749; *McMurtrie v. Bennette* Har. Ch. 124; *Chambers v. Liver-more* 15 Mich. 381; *Smith v. Lawrence* 15 Mich. 499; *Gram v. Wasey* 45 Mich. 223; *Seymour v. Delancy* 15 Am. Dec. 270; *Lane v. White* 12 Wis. 382; *Hay v. Lewis* 39 Wis. 364; *Williams v. Williams* 50 Wis. 311; *Bost. & M. R. R. v. Bartlett* 10 Gray 384; *Phelps v. I. C. R. R. Co.* 63 Ill. 469; *Hoyt v. Tuxbury* 70 Ill. 331; a contract which stipulates for payment on a day certain is determined if it is not then made: Fry Spec. Perf. (1st Am. ed.) §§ 710 *et seq.:* Waterman Spec. Perf. §§ 436, 461–9; Benj. on Sales 797, 825; but the default may be deemed to be excused if payment is made without much delay, and it would operate oppressively to determine the contract: *Stickney v. Parmenter* 35 Mich. 237; *Hall v. Delaplaine* 5 Wis. 206; specific performance cannot be claimed unless complainant shows that it will not be unjust and inequitable to defendant to grant it, and will be unjust and inequitable to him to refuse it (Story's Eq. § 736; Waterman Spec. Perf. § 169; *Munch v. Shabel* 37 Mich. 167; *Barney v. Loper* 16 Barb. 629; *Tibbs v. Morris* 44 Barb. 138; *Stone v. Pratt* 25 Ill. 25); that there has been no change of cir-cumstances affecting the character or justice of the contract (Story's Eq. §§ 750, 776); that compensation for delay can be fully and beneficially given, and that he is in a condition to specifically perform his part of the contract (Story's Eq. 776); that he has ever shown himself ready, desirous, willing

and eager to perform the contract (id.; Fry on Spec. Perf. 732; *Alley v. Deschamps* 13 Vesey 224; *McCabe v. Crosier* 69 Ill. 501; *Beach v. Dyer* 93 Ill. 301); that he has not been guilty of *gross laches or negligence* either *in performance, tender of performance* or bringing his suit: Story's Eq. § 771; *Russell v. Nester* 46 Mich. 290; *Thompson v. Bruen* 46 Ill. 125; *Stow v. Russell* 36 Ill. 18; *Board of Sup'vrs, etc. v. Henneberry* 41 Ill. 179; *Roby v. Cossitt* 78 Ill. 638; *Rummington v. Kelley* 7 Ohio (part 2) 97–104; *Kirby v. Harrison,* 2 Ohio St. 327; *Higby v. Whittaker* 8 Ohio, 198; *Finch v. Parker* 49 N. Y. 1; *Rogers v. Saunders* 16 Me. 92; *Brashier v. Gratz* 6 Wheat. 541; *Edwards v. Atkinson* 14 Tex. 373; *Barnard v. Lee* 97 Mass. 94; courts of equity will not decree specific performance where the remedies are not mutual and the contract only binds one of the parties to it: *Hawley v. Sheldon* Har. Ch. 421; *Maynard v. Brown* 41 Mich. 299; *Parkhurst v. Van Cortlandt* 1 Johns. Ch. 281; the purchaser's poverty is no excuse for the non-performance of his contract: *Milnor v. Willard* 34 Ill. 38; *McVickar v. Filer* 31 Mich. 304: nor is loss of money from fire and losses in business an excuse for non-performance by vendees: *Stow v. Russell* 36 Ill. 18; nor that vendee was a clerk of a court and engaged as such at the time of default and until tender, six days after: *Mason v. Ely* 38 Ill. 142; previous indulgences by a vendor in waiting for money until after it falls due, or previous acceptance of money after due, does not waive any rights as to subsequent payments or breaches of the contract: *Green v. Green* 9 Cowen 46; *Lent v. B. & M. R.* 11 Neb. 201; parties failing to perform their contracts are not relieved unless their failure has resulted from fraud or accident, or waiver of the opposite party, or unless it will be inequitable for the vendor to insist: *Tibbs v. Morris* 44 Barb. 138; and if a contract is assigned the assignee must look up the vendor and demand a conveyance in a reasonable time: *Hedenberg v. Jones* 73 Ill. 149.

CAMPBELL, J.   This is substantially a bill to obtain specific performance of a land contract made by defendant Hoyt with complainant in November, 1876, and claimed to have been so dealt with by Folsom & Arnold, as to give special equities against them.

This contract, which was for an aggregate purchase price of $26,000, provided for the sale to Gamble of about 4000 acres of pine lands, a part in town 24 north, of range 3 east, and a part in town 24 north, of range 4 east, in the county of Ogemaw.   The payments were to be made in 4 installments of $2000, each within 90 days,—one of $9000 in one year, and one of $9000 in two years, with interest, and taxes. Cutting of logs was to be confined to town 3, until one of the $9000 payments was made.   Other conditions, which were numerous and stringent, need not be mentioned, except that no assignment was to be made without consent, and forfeiture was provided for on breach.

Substantially contemporaneous with this was a contract whereby complainant agreed to get out and sell to Folsom & Arnold 4 million feet of logs from township 3 at $7 per thousand, and they were to advance the $8000 necessary to meet the four installments first mentioned, and make other payments as specified, and were to be at liberty, in case of lack of diligence on complainant's part, to go on with the work themselves at his expense, and retain a lien for advances.   At the same time Gamble assigned the contract to Folsom & Arnold, the assignment to be void on the fulfillment of the lumber contract.   On this assignment Mr. Bartow, the agent of Mr. Hoyt, indorsed a consent to assigning so much as related to the land in town 3.

Gamble did not completely perform his contract with Folsom & Arnold, and it was extended until 1878.   In the mean time he made other contracts with them.   They advanced the payments agreed upon and made other payments to and for him.   In the latter part of 1877 he proposed to sell them the timber in town 4 and the subject was held under advisement, but declined in 1878.   Gamble then made an arrangement with the firm of Gates & Fay to

pay up the purchase price of the lands in town 4 and lumber thereon on joint account. In August, 1878, they saw Mr. Bartow and made preliminary arrangements for securing this end, but it was prevented by the claim of Folsom & Arnold that they held an assignment of all instead of a part of the contract, and Bartow would not assume the risk of litigation. Gates & Fay therefore did not carry out the proposed plan. In the latter part of August, 1878, just before the repeal of the Bankrupt Law was to take effect, Gamble filed his voluntary petition in bankruptcy, under which he compromised with his creditors. He obtained his final discharge in April, 1880.

On the 19th of September, 1878, Bartow notified Gamble that the original contract was forfeited. This notice did not state on what particular grounds the forfeiture was declared. On the 11th of October, 1878, Hoyt conveyed to Folsom the lands in town 3 and made a contract for those in town 4 for the precise amount remaining unpaid on the original contract with Gamble.

After obtaining his discharge in bankruptcy complainant, on the refusal of defendants to recognize his rights, filed this bill, and obtained a decree in his favor. Hoyt took no active part in the controversy, and submitted to such decree as the court might make. Folsom & Arnold appeal.

The facts on which the case must turn are not complicated, although there is considerable testimony on some matters which become material if specific performance is granted. It becomes chiefly important to know how matters stood before the declaration of forfeiture.

The assignment to Folsom & Arnold was on its face a mere security.

It was confined by its express provisions to the contract of November, 1876, and covered no other transactions. As the accounts are not yet formally closed, we need not consider what unliquidated claims Folsom & Arnold then had against Gamble. It is questionable whether they had not been fully reimbursed, but this we need not now determine.

They took the assignment with a distinct understanding that it was not available without the consent of Hoyt. As that consent was confined to the lands in town 3, and as their contract was also confined to those lands, we think their rights under the assignment were so limited.

We are of opinion that—so far as the record shows—Mr. Bartow did not intend to declare a forfeiture of the contract until Folsom applied to him to purchase the land. When Folsom made this application or inquiry, not only had the contract not been forfeited, but it could not be, under its own terms, without notice to the parties interested, and Bartow knew that Folsom & Arnold were so interested. The immediate connection between the forfeiture and the subsequent dealings with Folsom renders it quite clear to our minds that whether expressly agreed on or not, the parties understood that the whole arrangement was for the purpose of enabling Folsom to get the lands, and to get them for the contract price, and that he did so procure them.

At this time all the parties knew that nothing but Folsom & Arnold's unwarranted conduct had prevented Gates & Fay from securing the land to Gamble's benefit. It is also evident, from the terms that Gates & Fay proposed to make, that the land was regarded as worth considerably more than the unpaid balance. It is impossible to doubt that Folsom—whether acting alone or for his firm—took advantage of the security in their hands to get the title to this property against right.

The only remaining question on the main issues is whether there has been any loss of right in complainant by laches or acquiescence.

So far as Folsom & Arnold are concerned we do not see any ground whatever for such a claim. They were bound to use their security for Gamble's benefit subject only to their own debt against him, if they had any. That debt was the full measure of their rights. The mortgage to them did not become forfeited or foreclosed by his default; if he was in default. They could not by the same act

destroy his equities and obtain a complete title for themselves, without leaving him a right of redemption. And the fact that Folsom saw fit to take the title in his individual name could not enlarge his rights or destroy his duties. We must look at the real substance of the transaction, which cannot be changed by the mere shifting of names.

Gamble acted as soon as he was in legal condition to do so. If an assignee had been appointed there was nothing, so far as we can see, which would have precluded him from disposing of Gamble's interest, or otherwise obtaining the benefit of it.

No new reason existed in September, 1878, for forfeiting the contract, which did not exist in August, and in that month Bartow's conduct was inconsistent with any purpose of forfeiture. As already suggested, we have no doubt that without Folsom's interference there would have been no forfeiture, and without giving Folsom & Arnold a reasonable notice there could have been none.

We see no reasons for disturbing the decree below. And as the court below reserved the equities on the accounting we need not now inquire further.

The decree must be affirmed with costs against the appellants, and the cause remanded for further proceedings.

The other Justices concurred.