HOULIHAN v. FOGARTY.

1. EXECUTORS AND ADMINISTRATORS—SALES—LICENSE.
   Without a lawful license, no valid sale of real estate can be made by executor, administrator, or guardian.

2. SAME—GUARDIAN AND WARD—EVIDENCE OF SALE.
   The sale of real estate by an administrator who also controlled the same property as a guardian of a part of the interested owners, is shown to be a sale in his capacity of guardian by evidence that as such guardian he published a notice, acknowledged the deed and filed an account of the sale.

3. GUARDIAN AND WARD.
   No valid sale of real estate is executed where the guardian having control of the property obtains no license, in advance of the sale, although he procures the subsequent execution of a license dated back to a proper time, where he gave no bond upon the sale, took no oath in writing, published an incorrect and incomplete notice of sale, accepted a bid not made

at the place of sale or in the county in which the land was situated, and failed to execute a deed in accordance with the alleged authority.  3 Comp. Laws, §§ 9094, 9129.

4. Same—Confirmation of Sale—Validity.
    A confirmation of guardian's sale of realty made 30 days after the sale and 15 days after the execution of a deed transferring the property, but dated two days later than the date of sale at the request of the guardian, is not a valid confirmation.

5. Same—Purchase by Guardian—Good Faith.
    A purchase at public sale, by a guardian, of property held by him in trust for others, is void, where the title has not passed to a bona fide purchaser without notice.  3 Comp. Laws, § 9095.

6. Same—Purchaser in Good Faith.
    Where purchasers have notice by a reference in the guardian's deed that license to sell was granted on the day of sale, and where fatal defects in the proceedings appear, no title is conveyed.

7. Estoppel—Conveyances.
    An estoppel to question the validity of a guardian's sale does not arise in favor of parties who know the actual facts, are not induced to act to their prejudice or to lose rights by the acts of the owners.

8. Same.
    The lessor is estopped as against his lessee from asserting ownership of a smaller interest, but not from asserting title to a larger interest than the instrument expresses.

9. Same—Deeds—Lease.
    In an action not founded on a lease recitals contained in it do not operate by way of estoppel, as to a party with whom no covenants are made.

10. Equity—Laches.
    Evidence *held* not to show laches of the complainants in a suit to set aside a guardian's sale and conveyance.

Appeal from Iron; Stone, J.  Submitted February 18, 1910.  (Docket No. 56.)  Decided September 27, 1910.

Bill by Theresa Houlihan and others against Patrick Fogarty and others to set aside a deed.  From a decree

dismissing the bill, complainants appeal. Reversed, and decree entered for complainants.

*Fred H. Abbott* (*M. J. Sherwood*, of counsel), for complainants.

*Cummiskey & Spencer* and *A. F. Dixon* (*John Power*, of counsel), for defendants.

McALVAY, J. Complainants on January 23, 1907, filed their bill of complaint against defendants for the purpose of having a certain deed set aside and declared null and void as a cloud upon their title to certain lands located in Iron county. On July 10, 1887, Michael Houlihan, the father of the complainants, died intestate, at his home in Wisconsin, seised in fee simple of 160 acres of wild timber land described as the southeast quarter of section 36 in township 43 north, range 35 west, in Iron county. The complainants are his only heirs at law. Ellen Houlihan, his widow, is their mother. These nine children were all minors at the time of the death of their father, of ages between 18 and 3 years, and all but two of them have always been nonresidents of this State. In December, 1887, the probate court of Iron county appointed defendant Patrick Fogarty guardian of the nine minor children. He afterwards, on January 3, 1888, petitioned to be appointed administrator of the estate of Michael Houlihan, deceased. He qualified in both capacities. His bond as guardian, and also his bond as administrator, were signed by defendants John Dinneen and Edward Donovan (deceased) as sureties. The estate of Michael Houlihan consisted only of the 160 acres of land above described. He was indebted at the time of his death to the amount of $400 or $500. The widow and the children had no means of support. The estate of the minor children consisted only of their several interests in this land inherited from their father. It is claimed that as administrator Patrick Fogarty petitioned the probate court for license to sell this land for the purpose of paying

debts, interest, and charges, as appears from what purports to be an order of sale of the premises for the purposes mentioned, subject to dower and homestead rights of the widow, made on hearing a petition granted to him as administrator. The date upon which this license to sell was made is in dispute. In the first paragraph it appears that the date had been changed. A pen had been drawn through the date September 8, 1888, and July 25th substituted. It reads as follows:

"STATE OF MICHIGAN, ⎱ ss.
  "County of Iron. ⎰

"At a session of the probate court for said county held at the probate office in the township of Crystal Falls on Saturday the ~~eighth~~ 25 day of ~~September~~ July, in the year of our Lord one thousand eight hundred and eighty-eight.

"Present, Charles Gallagher, Judge of Probate."

Fogarty as guardian of the minor heirs of Michael Houlihan, commencing June 9, 1888, published a notice for thirteen successive weeks, as follows:

"FOR SALE: As guardian of the heirs of M. Houlihan, deceased, I am authorized, by the probate court of Iron county, to dispose of the following described property for the benefit of the heirs, to wit: The S. E. ¼ of section 36, township 43, range 35 west. Will sell with right to reserve one-fourth interest in minerals. Price paid to be cash. Good clear title will be given. For information write to me at Stambaugh, Michigan, or apply at my homestead in Stambaugh township. Bids to be in by September 8, 1888.
                          "PAT FOGARTY, Guardian."

In the description given in the above notice it was printed township "42." An erasure has been made with a pen, and it is changed in ink to read "43" which is the correct description. Fogarty admits that he made this change. There is not of record in the probate court any order of hearing the petition for license to sell this land by Fogarty either as guardian or as administrator, nor any proof of publication, or other service of such order, nor any order granting any license to sell any of this land for

any purpose by him in any capacity. The order above referred to as purporting to be a license of sale granted to him as the administrator of the estate of Michael Houlihan, deceased, was found in the files in probate court. It will be more particularly described later in this opinion. On September 8, 1888, Fogarty reported that he had sold as "guardian of the heirs of M. Houlihan" the following described lands to the following named persons:

"The N. W. ¼ of the S. E. ¼ of sec. 36, 43–35 to William Young at $8 per acre, equals $320.00. The N. E. ¼ of the S. E. ¼ of sec. 36, 43–35 to John Swanson at $10.25 per acre equals $410.00. The S. ½ of the S. E. ¼ of sec. 36, 43–35 to John Dinneen at $8 per acre equals $640.00."

On September 14, 1888, Fogarty, as guardian, executed deeds of the lands above described to the parties above named. The deed executed to defendant John Dinneen purporting to convey the S. ½ of the S. E. ¼ of section 36, excepting an undivided one-quarter interest in all minerals, is the deed which complainants by this suit ask the court to set aside. The other deeds are not involved. The bid of Dinneen was made to Fogarty at Escanaba, Delta county, before the sale, and was accepted by Fogarty at Escanaba. Dinneen was not present at the sale in Iron county. At this time the relations between Fogarty, the guardian, and defendants Dinneen, Maloney, and Donovan, now deceased, but who is represented by an administrator, were that Dinneen and Donovan were sureties upon his bond as administrator, and also upon his guardian's bond, and Maloney was a surety upon what is claimed to be his administrator's sale bond. The four defendants, Fogarty, Dinneen, Donovan, and Maloney, resided at Escanaba, and were old friends. Within six months after Fogarty as guardian made the deed to Dinneen and while he was yet administrator of the estate of M. Houlihan and guardian of these minors, Dinneen divided the interest he claimed in the premises equally with Fogarty, Donovan, and Maloney, by deeding to

each one-fourth thereof, making each the apparent owner of three-sixteenths, and each paid Dinneen exactly one-fourth of $640, the purchase price paid by him. At the time of instituting this suit, the apparent fee-simple title to the mineral conveyed to Dinneen remains exactly the same as when deeded by Dinneen to Fogarty, Maloney, and Donovan. They received from the Kinneys who purchased the surface land $800 in 1901.

In the year 1903 William J. Tully obtained an option for a mining lease on these premises from the parties claiming to be the owners, including these complainants, and afterwards a mining lease was prepared by Fogarty; but this lease was in some way lost. This option and lease are not in the record. They were procured by Mr. Tully for the purpose of prospecting for iron ore. While he was attempting a sale of his option, the question of the state of title was raised for the first time, and eminent counsel was employed to investigate the title and to procure options for a mining lease. He acted for defendant Tully Mining Company, to which Tully has assigned his rights, and for other clients. Counsel says in his testimony:

"There were grave doubts in my mind at that time as to whether that sale was valid, and as to whether or not the Houlihans were not entitled to the entire property."

He succeeded in obtaining another option from complainants to Mr. Tully dated November 2, 1903. The first option to Tully was dated January 10, 1903. A few days before November 2, 1903, Mr. Tully's counsel met Mrs. Ellen Houlihan, the widow, at her daughter's house in Oconto in October before the 28th. He says:

"I endeavored to make her understand as well as I could just what the situation was, and also that the title of Dinneen, and those claiming under him, was seriously open to question. I advised her to present the matter to her lawyers. The daughter who was sick was present, and the old lady's mind was very much troubled, and I got over the matter as soon as I could. The daughter was

lying there, and I could see her through the door.    The old lady seemed to be very nervous and troubled."

He also talked with a son-in-law of Mrs. Houlihan when he was securing his wife's signature to an option. The son-in-law testifies that he told some of the Houlihans.    This is the first notice any of the complainants had that the validity or regularity of the sale made by Fogarty was questioned.    Several of the complainants did not learn of it until late in 1905.    Mrs. Houlihan's interest in these premises, as widow of Michael Houlihan, is not in dispute or questioned by any of the defendants.    She is not a party to this suit.    The defendants Fogarty, Dinneen, Maloney, and Donovan (by representatives) are the fee claimants, and the real defendants in the case.    Defendants Kinney are interested only in the surface land. The defendant mining companies by stipulation with complainants will be unaffected whatever the result of this suit.    The foregoing statement of the situation in this case if not sufficiently complete will be made so as necessity arises.    In their answer to the bill of complaint, the principal defendants rely for their source of title upon the conveyance from Fogarty, claiming to act as guardian, and that he as such guardian conveyed to Dinneen, in fee simple, the land in question, and allege the regularity of such sale.    Upon the hearing had in the court below a decree was entered dismissing the bill of complaint without costs.

It is insisted by the principal defendants that the proceedings relied upon by them, which were taken by Fogarty to sell the land in question, were valid proceedings and according to law; that, at most, the imperfections in those proceedings pointed out by complainants were mere irregularities which will not make void the sale.    They contend that under a valid license to sell as administrator Fogarty followed substantially the essential requirements of the statute in every step taken by him, and in all that he did he acted as administrator.    The contention of complainants is that, acting as guardian, Fogarty undertook to make a

sale of this real estate, and as such guardian attempted to convey the same to defendant Dinneen; that he did so without authority by license as required by statute; and that he failed in practically all essential particulars to conform with the law. The learned circuit judge took the view, and adopted the theory, of the principal defendants.

Section 9129, 3 Comp. Laws, to which both parties appeal as containing the requirements necessary to the validity of a sale of real estate by executors, administrators, or guardians, provides:

"In case of an action relating to any estate sold by an executor, administrator or guardian in which an heir or other persons claiming under the deceased or in which the ward, or any person claiming under him shall contest the validity of the sale it shall not be avoided on account of any irregularity in the proceedings, provided it shall appear:

"*First.* That the executor, administrator or guardian was licensed to make the sale by the probate court having jurisdiction;

"*Second.* That he gave a bond which was approved by the judge of probate in case a bond was required upon granting a license;

"*Third.* That he took the oath prescribed in this chapter;

"*Fourth.* That he gave notice of the time and place of sale as in this chapter prescribed; and

"*Fifth.* That the premises were sold accordingly and the sale confirmed by the court, and that they are held by one who purchased them in good faith."

It must first be determined from this record in what capacity Fogarty acted in making this sale. If, as is contended by defendants, and determined by the court, he was acting as administrator of the estate of Michael Houlihan, deceased, we must consider the authority under which it is claimed he acted. It is urged that the probate court of Iron county granted him a license to sell as administrator. This claimed license was found in the files of court. No indorsement of filing is written upon

it. It was never recorded in the records of the probate court, as provided by law. It is a blank form filled in, purporting to be a license granted to Fogarty as administrator to sell this real estate. It is not signed in the place provided in the blank. The only signature of the probate judge is to the following form of a certificate which is written upon it:

"STATE OF MICHIGAN, }
   "County of Iron.   } ss.:
   "I hereby certify that the foregoing is a true copy of the order and of the whole thereof heretofore entered in the above matter authorizing a sale by the said administrator of the above described real estate.
   "Dated Sept. 8, 1888.
                          "CHARLES GALLAGHER,
                     "Judge of Probate of said County."

This date is quite significant. If the first paragraph of this instrument given above is examined, it will show that it is the same date which was first written and afterwards erased, and for which July 25th was substituted. September 8th is the date Fogarty claims the sale was made to Dinneen. The learned circuit judge inclined to the belief that this was the original order, that the probate judge in his carelessness or ignorance signed it as it appears, and that the presumption was that the erasure was made before its execution—citing *Munroe* v. *Eastman*, 31 Mich. 285, and quoting,

"*Where nothing suspicious appears on the face of the deed beyond the fact that an erasure is manifest.*"

If it is accepted as the original, its date is fixed upon its face as September 8, 1888, when it was signed, from which it must be inferred that the correct date was first written in this license when it was made out, and was afterwards changed. An examination of a calendar for the year 1888 shows that September 8th occurred on Saturday and July 25th on Wednesday. The license as mutilated reads, "On Saturday the ~~eighth~~ 25 day of ~~September~~ July," which is additional proof that the license was not issued

before Saturday, September the 8th. Fogarty gave notice of the sale of this land, which will be considered later. This notice and its date of publication is, however, of present importance, as bearing upon the question of the genuineness and validity of the claimed license to the administrator. It will be remembered that it is claimed that this license was granted July 25, 1888. The files of the newspaper in which this notice was published, introduced in evidence, show that the first publication was June 9, 1888, and the last was September 1, 1888. By the notice he claimed to be authorized by the probate court of Iron county to sell this real estate 47 days before July 25, 1888.

From the foregoing facts, taken from this record, it would appear that the instant case is readily distinguishable from the case relied upon. Can it be said that nothing suspicious appears on the face of the instrument beyond the fact that an erasure is manifest? Not only is the face of this instrument clouded with suspicions, but the evidence furnished by Fogarty impeaches its authenticity and forces the conclusion that it was made on the date first written. After a careful consideration of the facts, it is impossible to seriously consider this license as genuine. The only reasonable theory which will account for this instrument is that on the day of the sale it was discovered that no license had ever been granted. Such a paper was necessary to show a license authorizing a sale of this real estate, and this paper was manufactured. We have in this record in the handwriting of Fogarty evidence requesting a similar act by this judge of probate which will be considered later. We find that, in fact, no license was issued as provided by law to Fogarty as administrator authorizing him to make this sale. If the contention that Fogarty acted as administrator in his proceedings to make this sale is admitted, our finding that no license was ever granted to him as administrator for that purpose disposes of it. Without lawful license, no valid sale of real estate can be made by executor, administrator, or guardian.

On the other hand, if Fogarty, as complainants contend, proceeded to make this sale as guardian of these minors, we must determine whether that contention is true, and if found true, whether his proceedings were taken according to the requirements of the statute and the sale consequently valid. The deed by which title, if any, passed to these defendants being their source of title, would naturally be the first item of evidence to challenge attention. In this Fogarty describes himself as "guardian of the heirs of Michael Houlihan," and he acknowledged the deed as such guardian. Next, the notice given by Fogarty in pursuance of which the sale was made also describes him as guardian of the heirs of M. Houlihan, and signed by him as such guardian. The record shows what purports to be a report of the sale, also signed by him as "Guardian of the heirs of M. Houlihan." He also as guardian filed an account of proceeds realized from such sale. All of these solemn instruments made and signed by him in the performance of his official acts, not contradicted by any testimony in the record, established beyond question that the grantor of these defendants intended to, and did, make this sale to these defendants as such guardian, and not otherwise. No claim is made in this record, or can be made, that he acted under a mistake. The allegation in their answer, "These defendants further severally answering admit that the defendant Patrick Fogarty claiming to act *as guardian of the complainants* made, executed and delivered unto John Dinneen a certain deed bearing date the 14th day of September, 1888, * * * whereby for the consideration of $640.00 the said Patrick Fogarty *as such guardian* conveyed to said John Dinneen in fee simple," etc., and the further statement in said answer denying the allegation in the bill that Fogarty was not authorized to make such deed as guardian, and the absence of claim or intimation in the answer that he was acting in any other capacity, are overwhelming evidence of the understanding of these parties, who were grantees in that deed, both at the time

it was executed in 1888, and in 1907, when its validity was challenged.

We find no evidence in the record to show that Fogarty acted or intended to act in any other capacity than as guardian in making this sale. Under the statute above quoted, the first essential requirement to make a valid sale of real estate by this guardian was "a license to make the sale by the probate court having jurisdiction." It is not claimed that the record shows that any license to make this sale was ever granted to the guardian. As already shown, the case was decided upon another theory. The two theories cannot be reconciled. Fogarty at the time was holding two distinct fiduciary offices. He was administrator of the estate of M. Houlihan, deceased. He was also "In the matter of the estate of Katie Houlihan and others, minors," appointed guardian of these minors. These were separate estates. His duties as administrator and guardian were distinct and separate. He never petitioned the probate court for a license to sell real estate, "In the matter of the estate of Katie Houlihan and others, minors," of which he was guardian. This is practically admitted upon this record. If the paper purporting to be a license to sell real estate could be accepted for what is claimed for it, it appears upon its face that as administrator "In the matter of the estate of Michael Houlihan, deceased," he was licensed to sell all real estate whereof decedent died seised, to pay debts, claims, interest, and charges, "subject to the right of dower and the homestead rights of the widow." It is not claimed by defendants that this was a license to Fogarty as guardian, but it is admitted and was determined to be a proceeding by the administrator, "In the matter of the estate of Michael Houlihan, deceased." The contention of these defendants indicates that the fact that two separate estates were being administered has been disregarded, not because the record of that fact is in any manner disputed, but because of the fact that in no other way is it possible to give this sale a semblance of validity under the statute.

Our determination that no license to sell was ever granted to Fogarty has eliminated all confusion of the two estates, and the separate offices he held. We find from the great weight of the evidence that Fogarty, as guardian of these minors, was never licensed to make the sale of this real estate by the judge of probate.

We think it proper to consider other alleged fatal defects in these proceedings because of the insistence of counsel for defendants that they were mere irregularities, and for the reason that, if the conclusion as to the irregularities of the claimed administrator's license is questioned, other defects appear to show the invalidity of this sale. It is undisputed that Fogarty as guardian never gave a sale bond as required by the statute. It follows that no bond was approved. As to the required oath, it appears from the testimony of Fogarty that he was at Crystal Falls on September 8, 1888, and took an oath before the sale was made. There is no evidence to show that this oath was in writing. No oath was filed as required, and no official record or evidence shows that the required oath was taken. The notice of this sale is already given. It in no essential particular conforms with the requirements of law. The undisputed evidence shows that this notice as published described land in another township. When Fogarty attached a copy of this notice to the claimed administrator's license, he changed the number of the township to make a correct description. This notice contains neither time or place of the sale, nor that the land would be sold at public vendue to the highest bidder. It was of no legal effect whatever as notice of a guardian's or administrator's sale of real estate. It follows that the sale was made without notice previously given as required by law. It appears as an undisputed fact from the testimony of Dinneen and Fogarty that the bid of Dinneen was given to and accepted by him at Escanaba, Delta county, not at Crystal Falls, the county seat of Iron county, in which the land was located, nor at Stambaugh. It also appears

that Dinneen was not present in Iron county on the date of the sale. Fogarty testifies:

" I made the sale the 8th of September, 1888. When I made the sale, I was either at Stambaugh or Escanaba. It may be possible that I made the sale to Dinneen at Escanaba. Dinneen never went over to Iron River. His bid was at Escanaba, and it was accepted there."

The sale therefore was not made according to notice or the provisions of section 9094, 3 Comp. Laws, which requires "such sale to be in the county where the lands are situated, at public vendue," but was made to Dinneen, in Escanaba, Delta county, where his bid was received and accepted. It was not made in accordance with the claimed authority, which reserved the widow's dower and homestead interest, nor was the whole of it sold as reported to the court, but with a reservation of one-quarter of the mineral. The record shows conclusively that no valid sale was made. The report of the sale was inclosed in a letter from Fogarty to the judge of probate, dated October 9, 1888, which, among other things, contained the following:

" Inclosed please find my report of sale, and I wish you would send me a confirmation or copy of confirmation of the sale and *date it back to about September 10, 1888,* and if necessary to put my report into blank form, you do so and it will be all right."

This is the instance referred to where Fogarty requested the judge of probate to falsify his record. It is evident that at the time this letter was written the sale h ad not been confirmed by the court, and this is the only evidence in the case relative to confirmation, except a recital in the deed to Dinneen. This was 30 days after the sale and 15 days after the deed was executed and delivered. A slip of paper found in the files apparently torn from a sheet of legal cap bears upon it the following writing:

" 1. Wednesday, July 25.   2. July 25.   Sold September 8.   Confirmation given Sept. 10."

It was considered by the court below as evidence of confirmation of this sale. It is certainly evidence that, if there was a confirmation, it was falsely and fraudulently made and dated back, according to Fogarty's request, from which it may be conclusively inferred that the other dates now very familiar to the court on this slip of paper were likewise fixed to serve the exigencies which confronted the guardian. A confirmation brought about in this manner cannot be held by this court to be a bona fide valid confirmation contemplated by the statute.

Much stress has been laid upon the *bona fides* of the fee claimant defendants Fogarty, Dinneen, Donovan, and Maloney. From foregoing intimations in this opinion it is evident that the good faith of Mr. Fogarty is at least questioned, and the fact that within six months after the sale he became a one-fourth owner of the property sold in consideration of $160 while he was yet administrator and guardian, thereby by indirection becoming a purchaser at his own sale, as a matter of law dissipates his defense of a good faith purchaser. The law prohibits such a transaction, and declares it void. Section 9095, 3 Comp. Laws. This court in construing this statute has held that such a purchase is void, where the title has not passed to a bona fide purchaser without notice, before the sale is impeached. *Otis* v. *Kennedy*, 107 Mich. 312 (65 N. W. 219), and cases cited. See, also, *Litchfield* v. *Tunnicliff*, 118 Mich. 383 (76 N. W. 760). The explanation of Fogarty and Dinneen as to how Dinneen became a purchaser "just to help out his neighbors the Houlihans," and how the three others each took an interest from Dinneen "just to help him out," because he was short of money, does not carry conviction of its truth. It has been explained that three of these men were bondsmen for Fogarty in these estates. It appears from the testimony of Fogarty that quantities of equally good land in that locality were for sale at $1.25 per acre, and yet the above is the only explanation either of them makes why eight dollars an acre were paid by them, or why there

was any reservation of minerals. It is apparent that it was expected by these men that minerals underlay this land, otherwise mention of minerals in the deeds and a division of interest in the minerals among them would be foolishness. Whether or not they were in a conspiracy to get this land is not material. None of them can be held to be a bona fide purchaser. All had knowledge of the record of the title deed upon which Dinneen relied. On its face this deed·showed that no valid license to sell had ever been granted to Fogarty. The deed was executed and delivered September 14, 1888, and among its recitals stated that the sale was made pursuant to a license granted September 8, 1888, which is the date of the sale, as stated in the deed. Furthermore, the defense of good faith under section 9129, *supra,* is not available to a purchaser except when all the essential requirements of the statute have been complied with. The defects in the proceedings in this case to sell these premises were not mere irregularities but were fatal and rendered the sale absolutely void. It follows that title never passed from complainants, and they are entitled to the relief asked, unless by their acts or failure to act since knowledge came to them of their rights in the premises. It is admitted by these fee claimant defendants that they cannot establish title by estoppel *in pais* because of the statute of frauds. It is also admitted that an estoppel will not arise in favor of defendants claiming title.

They urge, however, that an estoppel has arisen in favor of the defendant mining company. This last-named defendant has not answered the bill of complaint. Whether the bill has been taken as confessed against it does not appear. The amended record shows that, by stipulation, whoever succeeds in this suit the interests or rights of that company will in no manner be affected. The record shows that the solicitors for all these parties at the close of the proofs in a colloquy with the court stated that the royalty under the mining lease would follow the decree of the court on the fee, that no estoppel was claimed

against complainants by reason of this lease, and the attention of this court has been specifically called to this stipulation, which it is understood will be provided for in the decree if necessary. The joining by complainants in the options and leases did not operate as an estoppel, legal or equitable. The lessees were not induced to enter into these agreements by reason thereof. They were fully informed of all the facts as to the title. They did not do or omit to do anything to their prejudice in consequence or on the faith of such acts of complainants. Authorities need not be cited to show that estoppel will not be created by such acts. The options and leases were not made by complainants with the fee claimants, but are agreements separate and distinct made with the lessees. The first option and lease were given by complainants before any knowledge of an invalid sale. Do these options and leases create estoppel by deed ? The lessor is estopped as against the lessee from asserting ownership of a smaller interest, but not from asserting title to a larger interest than is expressed. There is no covenant whatever with the co-lessor. The action in this case is not founded upon the mining option and lease but is collateral to it, and facts recited or admitted in such instrument do not operate by way of estoppel in this action. 16 Cyc. p. 721, and notes; 11 Am. & Eng. Enc. Law (2d Ed.), p. 401, and notes. The mining lease printed in a supplemental record is too long to be printed in this opinion. The recitals above referred to are simply statements that complainants are collectively owners of an undivided one-fourth of the premises.

There is no question of adverse possession in this case, nor is the statute of limitations invoked. Nor can complainants be charged with laches. After all were fully and completely informed of their rights, reasonable diligence was had in bringing this suit. The relative positions of the parties are not altered to the prejudice of these defendants by any delay of complainants. The deed made to Dinneen is a cloud upon the title of complainants to these premises by reason of the illegality of the sale.

The decree of the circuit court is reversed and a decree will be entered in this court in their favor, declaring the sale of said land by Fogarty null and void, and vacating and setting aside the deed given to Dinneen, as a cloud upon the title of complainants, and that they be decreed to be the owners in fee to all of said premises, subject to the right of dower or other right of Ellen Houlihan, widow, and subject to the rights of defendant Tully Mining Company under the stipulation between the parties, the essential terms thereof to be recited in such decree, and that complainants do recover against said defendants Fogarty, Dinneen, Maloney, and the representatives of Donovan, their costs of both courts to be taxed.

HOOKER, MOORE, BROOKE, and BLAIR, JJ., concurred.