BACKUS *v.* BACKUS.

1. PLEADING—EQUITY—TRUSTS—REMEDY.

.Averments in a bill of complaint, among others, that plaintiff advanced to defendant a sum of money for the purpose of purchasing certain shares of bank stock, that defendant accepted the money with the understanding that he was to use it for said purchase for the account of plaintiff, and agreed to deliver said stock to plaintiff, and that while defendant has held said stock in his own name he really held it in trust for plaintiff, *held*, to sustain plaintiff's contention that an express trust is pleaded and that relief should be granted upon the theory of a trusteeship.

2. EQUITY—TRUSTS—PARTIES—THIRD PARTY—DEFENSES.

That plaintiff did not deliver certain bank stock, owned by him, to the receiver appointed in judgment creditor's proceedings against him as he should have done, cannot be taken advantage of by defendant, who was a stranger to said litigation, in equitable proceedings to recover from him said stock which he holds as a trustee and wrongfully refuses to return or account for.

3. LACHES.

Mere lapse of time is insufficient to constitute laches.

Appeal from Wayne; Collingwood, J., presiding. Submitted October 17, 1919. (Docket No. 73.) Decided December 22, 1919.

Bill by Henry N. Backus against Newton D. Backus for the specific performance of an express trust. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Lodge & Brown,* for plaintiff.

*Anderson, Wilcox, Lacy & Lawscn,* for defendant.

KUHN, J. The parties to this litigation are broth-

ers, who, together with their father, Absalom Backus, organized a corporation in 1885 known as "A. Backus, Jr., & Sons," after they had been together in business since 1873. The father died before this cause of action arose and practically all of the stock of the corporation is owned by the plaintiff and defendant.

On July 3, 1911, the defendant owned 50 shares of the capital stock of the Dime Savings Bank, which he had purchased in February, 1909. The bank decided to increase its capital stock from $500,000 to $1,000,-000, which it did by declaring a stock dividend of 20 per cent., and giving its stockholders the right to purchase 80 per cent. of their holding at $160 per share. By this right being conferred upon him, the defendant had the option to purchase 40 shares of the bank stock at $160 per share.

It is the claim of the plaintiff that on or about July 3, 1911, the defendant agreed with him to purchase the said 40 shares of the stock in the bank for the plaintiff and that thereupon the defendant, who was the secretary and treasurer of the corporation, in charge of its finances, made out the corporation's check, payable to his own order, for $6,400 and deposited it in his own private bank account and drew his personal check for a like sum of $6,400 in payment of the 40 shares of stock, which were issued to him. It is further claimed that the $6,400 disbursement out of the company's funds was charged to the plaintiff on the books of the corporation.

While the check was issued to the defendant, N. D. Backus, the stub of the check book was made out to appear that the check was payable to the order of H. N. Backus. It also appears that four dividends of $90 each were turned over by the defendant to the plaintiff.

The trial judge allowed a large amount of testimony to be introduced as to the affairs of the corpora-

tion which had no relevancy to the issue here involved but would be proper to be considered in an accounting between the two brothers. The testimony conclusively showed, however, that there was considerable ill feeling between the two brothers which, to say the least, is most unfortunate. It was further made to appear that 14 years before July 3, 1911, for the purpose of evading the collection of a certain note given by the plaintiff to the First National Bank of Bay City, which he claimed had been improperly obtained from him, that he transferred to the defendant upon the books of the corporation all of his capital stock in the corporation excepting two shares; that thereafter suit was brought against the plaintiff on the note in question and a judgment obtained in November, 1897, against him for $5,608.28; that a judgment creditor's proceeding was instituted and a receiver appointed on March 10, 1899. This judgment was paid by the plaintiff on August 3, 1913, and on August 25, 1913, a stipulation was filed, discontinuing the judgment creditor's proceeding.

The bill herein was filed on February 26, 1916. In the first serious contention that presents itself for our consideration, as to what the real character of this bill is and what the relief asked for is, it is the contention of the counsel for the defendant and appellee that the bill is one for the enforcement of specific performance of the contract and that if this is found to be true, that no relief could be given to the plaintiff because of the statute of frauds; and further because the relief asked for is impossible because of the hypothecation of this stock to the Wayne County and Home Savings Bank before knowledge of the commencement of this suit was brought to the defendant and that the bank is not a party herein.

The plaintiff contends that while the bill of complaint is, perhaps, inartificially drawn, that it clearly

appears from the averments therein that an express trust is pleaded and that in its entirety it is framed upon the theory of a trusteeship and that relief should be granted to the plaintiff upon that theory.

While the trial judge, in his findings, states that the proceeding is one asking for a specific performance of the contract, nevertheless we are of the opinion that a study of this bill sustains the contentions of the counsel for the plaintiff. Following are some allegations from the bill:

"3. Because he was not desirous of availing himself of his aforesaid rights of purchase, he transferred the same to the complainant, and complainant, to wit, on or about the 3d day of July, 1911, advanced to defendant the sum of sixty-four hundred ($6,400) dollars, for the purpose of purchasing forty (40) shares of the capital stock of said Dime Savings Bank at the price at which it was offered to said stockholders, viz., one hundred and sixty ($160) dollars per share; and said defendant then and there accepted said money, with the understanding that he was to use the same for said purchase, for the account of complainant, and then and there agreed to deliver the same to complainant, and said money was advanced by complainant to said defendant in trust for said purpose.

"4. Upon information and belief, complainant says that said money was used by said defendant for said purpose, and forty (40) shares of said capital stock were issued to said defendant, but in his name; and that from the time of the issue of said stock to said defendant, as aforesaid—while the defendant has held the same in his own name, he has really *held the same in trust for complainant.*"

While the bill itself prays that the defendant may be decreed and ordered by this court to assign and transfer this stock to the plaintiff, it also has a prayer for general relief. The trial judge, after hearing the evidence, made the following finding of fact:

"* * * after hearing all the testimony, the court is convinced that some time in July, 1911, there was an arrangement by which Newton D. Backus was to buy the bank stock for Henry N. Backus, that he did so buy it, and that the money was charged to Henry N. Backus, and that Henry Backus, to all intents and purposes, had paid for this stock."

Without going into detail as to the testimony to support this finding, we are convinced that the trial judge was right in this conclusion as to the facts as the record abundantly sustains this finding. But the judge was of the opinion, notwithstanding this conclusion as to the facts, that if the stock was owned by the plaintiff, Henry N. Backus, at the time of the agreement, the stock should have been delivered to the receiver who was appointed on March 10, 1899, and who had never been discharged, and that the plaintiff could not in equity now enforce the agreement of July 3, 1911. With reference to this legal conclusion of the trial judge it must be borne in mind that in the case presented before us, neither the judgment plaintiff—the First National Bank of Bay City—nor the receiver, nor the corporation, whose money was used to buy the stock, is complaining. Here, an outsider seeks to shield himself under this technical defense from the penalty of his own wrongdoing. He was a stranger to the entire litigation and should not be allowed in a court of equity to invoke the defenses which an intervening creditor or the receiver might claim.

It is contended that the doctrine of laches should be made to apply to this case and that the delay between July 3, 1911, and February 26, 1916, when this bill of complaint was filed, does not show diligence on the part of the plaintiff in bringing his suit. It is a fundamental doctrine which has been approved by this court many times that the mere lapse of time is not sufficient to constitute laches. The situation here

presented is a peculiar one. We have two brothers, engaged in the same business, whose business affairs were closely intermingled, and there would be a natural hesitation on the part of one of the brothers to enforce a claim of this kind in the courts against the other. One would naturally be reluctant to air such a family dispute and it sufficiently appears in the record—at least according to the claims of the plaintiff —that the defendant faithfully promised him to transfer the Dime Bank stock to him from time to time during said period. Attempts at reconciliation were made and these culminated, in 1914, in the following letter being written by the plaintiff to the defendant:

"DETROIT, MICHIGAN, December 26th, 1914.
"MR. N. D. BACKUS.

"My dear brother: I have already spoken to you in person, but as you asked me to write you, I hereby offer you my apology for any wrong or wrongs that you claim I have ever done you.

"I am writing this, relying on your promise that my affairs be straightened up on the books of the corporation of A. Backus, Jr., & Sons, not later than Tuesday noon, December 29th, 1914, and that you will also deliver to me by the same date, Dime Bank stock which you bought for me, with the accrued dividends to date, and also give my account credit for money advanced for Cadwell patent, for the benefit of the corporation, and credit me the money due me, which was transferred to S. E. Backus' account, and perpetuate the brotherly love for each other as it existed in years gone by.

"Yours, with best wishes,
"H. N. BACKUS."

To this, the following reply was received:

"DETROIT, MICH.,
"December 28, 1914.

"MR. H. N. BACKUS,
"Detroit, Michigan.
"My dear brother:

"Replying to your letter of December 26th, will

say you have evidently failed to grasp my idea. I told you I desire an acknowledgment of the many cowardly, sneaking methods employed by you to force results, which more gentlemanly upright methods would have accomplished.

"Regarding the affairs of the corporation, I will refer you to my attorneys, Messrs. Anderson & Wilcox, in the Moffat building.

"As to the brotherly love which you mention, I am unable to understand how you could imagine me dense enough to think you have any brotherly feeling for me after the way you have mistreated me.

"Yours respectfully,

"N. D. BACKUS."

These exhibits are set forth to show the state of mind that the parties were in in the last effort to effect an amicable settlement of this matter.

We are satisfied that this is not a case where the doctrine of laches can be properly invoked. See the following Michigan cases: *Wright* v. *Wright,* 37 Mich. 55; *Wykoff* v. *Sewing Machine Co.,* 43 Mich. 309; *Gamble* v. *Folsom,* 49 Mich. 141; *Seymour* v. *Rolling Mills,* 56 Mich. 117; *Chase* v. *Boughton,* 93 Mich. 285; *Metropolitan Lumber Co.* v. *Iron Co.,* 101 Mich. 577; *Fred Macey Co.* v. *Macey,* 143 Mich. 138 (5 L. R. A. [N. S.] 1036).

We are satisfied, after careful consideration of this case, that the equity court, under the theory of a trusteeship, can give full and adequate relief to the plaintiff. In our opinion, the defendant should be ordered to transfer to the plaintiff the stock which he bought for him and the unpaid accrued dividends thereon, which he received. If, on account of having the stock hypothecated, he is unable to do this, a decree may be entered against him for the value of the stock and if counsel are unable to agree as to the present value thereof, the case may be remanded to

the circuit court, with instructions to take testimony as to the value of this stock.

The decree of the lower court will be reversed and a decree here entered, in accordance with this opinion, with costs to the plaintiff and appellant.

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.