CARPENTER v MUMBY

Docket No. 77-4474. Submitted June 8, 1978, at Grand Rapids.—
    Decided November 6, 1978.

> Plaintiff Kenneth L. Carpenter and defendants Joan Carpenter
> Mumby, Beverly Morris Smith and Marlene Carpenter DeWitt
> are all children of Blake Carpenter, who died intestate in 1947
> seized of certain property. At the time of his death, Joan and
> Marlene were minors. Rita Carpenter, Blake's widow, was
> appointed administratrix of Blake's estate. She sold the prop-
> erty to her brother at its appraised value and, one week later,
> her brother reconveyed to her. Both deeds were recorded on
> October 3, 1947. Proceeds of the sale were distributed in
> November, 1947, according to law. In 1948 and 1953 Joan and
> Marlene, respectively, acknowledged receipt of their shares of
> the estate assets and released Rita as guardian. In 1956 Rita
> conveyed to Kenneth and his wife, Lucille, who in 1968 exe-
> cuted an oil and gas lease to Shell Oil Co. Joan, Beverly and
> Marlene also gave Shell a lease on the property in 1973 when
> they were informed of their possible interest as a result of their
> mother's sale and repurchase while administratrix, in possible
> violation of the probate code. Shell drilled a producing well and
> informed plaintiffs Kenneth and Marlene that the royalties
> would be escrowed pending clarification of title to the property.
> Plaintiffs filed an action to quiet title against Joan, Beverly and
> Marlene, who counterclaimed to quiet title in themselves. The
> Manistee Circuit Court, Charles A. Wickens, J., found that the
> deeds from Rita Carpenter to her brother and back again were
> void and that defendants were unaware of that fact until 1973
> and ordered plaintiffs to deed a proportionate interest to Joan,
> Beverly and Marlene. Plaintiffs appeal. *Held:*
>
> > 1. The sale of real property in probate by the administratrix

REFERENCES FOR POINTS IN HEADNOTES
[1] 31 Am Jur 2d, Executors and Administrators § 358.
[2] 61 Am Jur 2d, Pleading §§ 152-154.
[3] 23 Am Jur 2d, Deeds § 137.
    27 Am Jur 2d, Equity §§ 157-163.
[4] 27 Am Jur 2d, Equity §§ 164, 165.

in violation of the statute prohibiting self-dealing is voidable only, the contrary statutory language notwithstanding.

2. The limitation period for equity actions to recover lands claimed by another through a voidable deed made upon sale by an administrator is five years.

3. One invoking the aid of equity, after apparently sleeping on his rights for a time equal to the statutory period of limitations must allege facts which excuse the delay and show strong equities in his favor; the allegation that the facts were undiscovered until lately is too general and indefinite to show the absence of laches and the presence of a family relationship cannot indefinitely excuse suit where no previous attempts were made to settle the dispute.

Reversed and remanded.

1. EXECUTORS AND ADMINISTRATORS—STATUTES—SALE OF REAL PROPERTY—FIDUCIARY SELF-DEALING.

Any sale of real property which is in probate and made contrary to statute prohibiting the fiduciary making the sale from having any direct or indirect interest in the purchase renders the sale and resulting deeds voidable only, notwithstanding the contrary statutory language (MCL 709.27; MSA 29.3178[487]).

2. PLEADING—EVIDENCE—FAILURE TO OBJECT—COURT RULES.

Failure to plead an affirmative defense, as required by applicable court rule, is cured where evidence establishing such defense is introduced at trial, without objection, and the question is argued to the court by both parties (GCR 1963, 111.7).

3. LIMITATION OF ACTIONS—STATUTES—EQUITY—RECOVERY OF LANDS—VOIDABLE DEEDS—EXECUTORS AND ADMINISTRATORS.

By statute the five year period of limitation to recover lands claimed by another through a voidable deed made upon sale by an administrator applies of its own force to equity actions, yet the equitable doctrine of laches also applies where equitable relief is sought; under Michigan case law it is not clear whether the doctrine of laches in such suits can only be used to narrow the statutory period or whether it may also be invoked in special cases to expand the time for bringing suit. (MCL 600.5801(1), 600.5815; MSA 27A.5801, 27A.5815).

4. EQUITY—LACHES—EXCUSE OF DELAY—RECENTLY DISCOVERED FACTS.

One invoking the aid of equity, after apparently sleeping on his rights for a time equal to the statutory period of limitations, must allege facts which excuse the delay and show strong equities in his favor; the allegation that the facts were undis-

covered "until lately" is too general and indefinite to show the absence of laches and the presence of a family relationship cannot indefinitely excuse suit where no previous attempts were made to settle the dispute.

*Thompson, Zirnhelt & Bowron,* for plaintiff.

*Running, Wise & Wilson* (by *T. J. Phillips, Jr.),* for defendants.

Before: DANHOF, C.J., and V. J. BRENNAN and R. H. CAMPBELL,* JJ.

DANHOF, C.J. This appeal involves a family dispute over title of long standing to an 80-acre parcel of land, located in Manistee County. Both sides claim interests through a common owner, Blake Carpenter, who was seized of the property at the time of his intestate death on May 17, 1947. Coplaintiff, Kenneth Carpenter, is the son of Blake Carpenter. He claims virtually full ownership[1] by purchase through a chain of title leading back to a deed from the administratrix of Blake Carpenter's estate. Defendants and counterclaimants, Joan Carpenter Mumby, Beverly Morris Smith, and Marlene Carpenter DeWitt, are also children of the late Blake Carpenter. Each seeks a 1/6 share of the Manistee property as heir to her father's estate, arguing that the deed by the administratrix was void, because it was given by the administratrix under an illegal arrangement to purchase the property for herself. See MCL 709.27; MSA 27.3178(487).

These facts are undisputed. Blake Carpenter's widow, Rita, was the administratrix of the estate.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] He claims co-ownership in all but a one-half interest in the mineral rights, which he and his wife conveyed to a third party in 1973.

By license, she sold the land to her brother, at its appraised value, on September 25, 1947. One week later, the brother reconveyed it to her. Both deeds were recorded October 3, 1947. Proceeds of the sale, along with other estate assets, were distributed in November, 1947, to the widow and four children according to the laws of intestate succession.[2]

At the time of the sale and repurchase, two of the defendant children, Joan Carpenter Mumby and Marlene Carpenter DeWitt, were minors. Upon reaching the age of majority in 1948 and 1953 respectively, each acknowledged receipt of her share of the estate assets and released Rita Carpenter as guardian.

In 1956, Rita Carpenter deeded the Manistee property to plaintiffs Kenneth Carpenter and his wife Lucille.[3]

In 1968, plaintiffs executed an oil and gas lease to the Shell Oil Company. Subsequently, in 1973, defendants also gave oil and gas leases to Shell, after the company informed them of their possible interest in the property, due to their mother's sale and repurchase while administratrix, which may have violated the probate code rule against self-dealing.

Shell drilled a successful well and notified plaintiffs it would place all royalties in escrow until the question of title was clarified.[4] Plaintiffs therefore filed a quiet title action. Defendants counterclaimed to quiet title in themselves.

[2] By those laws the widow took one-third, while each of the children took one-sixth of the estate.

[3] Rita Carpenter had entered into a land contract to sell the property to another person in 1951, but regained it because of a default in payment.

[4] Plaintiffs originally joined Shell as a defendant, but dismissed the company, by stipulation with defendants upon agreement to escrow the royalties.

The trial court opined that the deeds from Rita Carpenter to her brother and back to her were void. It found that defendants were unaware of the facts until 1973, when they were contacted by Shell, which disproved any claim of ratification, acquiescence or laches. Therefore, it ordered plaintiffs to sign deeds granting defendants each a 1/6th interest in the land. For the reasons stated herein we reverse.

Plaintiffs apparently concede that the sale and repurchase by Rita Carpenter as administratrix in 1947 was invalid under MCL 709.27; MSA 27.3178(487).[5] The main issue argued at trial and on appeal is whether this invalidity rendered the deeds void or merely voidable. Our holding, upon review of the controlling statute and case law, is that such a deed is voidable only, and that any interest passing through it is only voidable in the hands of a non-bona fide purchaser with knowledge of the facts rendering the sale invalid.

That was the rule at common law before enactment of the predecessor to MCL 709.27; MSA 27.3178(487). *Hoffman v Harrington*, 28 Mich 90, 106–107 (1873) (opinion by GRAVES, J.). When the Legislature first enacted the rule against self-dealing into positive law, it used the word "void" rather than "voidable." See Mich Rev Stat of 1846, Ch 77, § 18, p 309. Yet, our Supreme Court, concurring in the position of a majority of the states, see Anno: *Void or Voidable Character of Sale Made in Violation of Statute Providing that no Representative Making Sale Shall be Interested*

---

[5] That section of the probate code provides:

"The fiduciary making the sale shall not directly or indirectly purchase, or be interested in the purchase of any part of the property so sold, and all sales made contrary to the provisions of this section shall be void; but this section shall not prohibit any such purchase by a guardian for the benefit of his ward."

*Therein, but Confirmed by Court,* 111 ALR 1362, 1366; 31 Am Jur 2d, *Executors and Administrators,* § 386, p 187, interpreted the statute as incorporating the common law doctrine. *Houlihan v Fogarty,* 162 Mich 492; 127 NW 793(1910); *Otis v Kennedy,* 107 Mich 312; 65 NW 219 (1895); 13 Callaghan's Mich Pleading & Practice, § 105.28, p 258.

When the self-dealing provision was reenacted in 1939, the "void" language was retained. We do not discern a clear legislative intent in that enactment to change the law. Compare, *Hoffman v Harrington, supra,* at 91–99 (opinion by CHRISTIANCY, C.J.), with *id.* at 106–108 (opinion by GRAVES, J.). See also, 1A Sutherland, Statutory Construction (4th ed), § 22.33, p 191. Since the language of the present code is in pertinent part identical with its predecessor statute, see *Hoffman v Harrington, supra* at 95, *Houlihan* and *Otis* are authoritative interpretations of both.

Finally, we note that the common law rule is sound policy. It serves to increase the value of estate property by assuring the vigilant and cautious purchaser that his title will not be upset. See *White v Iselin,* 26 Minn 487; 5 NW 359 (1880).

Counterclaimants rely on *Smith v Withey,* 309 Mich 364; 15 NW2d 671 (1944), which decided, under the present version of the self-dealing provision, that an administratrix's retained interest in property indirectly purchased by her while representing the estate was "in [that] instance void". *Id.* 366. The Supreme Court's use of the statutory language "void" in that case is ambiguous. The holding is not inconsistent with the rule of *Houlihan* and *Otis.* The interest in the hands of the administratrix was clearly voidable. Other interests which had passed through her deed to subse-

quent purchasers were not determined on appeal, those parties acquiescing in the lower court's decree that they "be protected upon payment to plaintiffs of sufficient money to satisfy the value of their * * * interest[s] in the premises and thereby have their deeds validated". *Id.* 367.

Whether plaintiffs' deed is voidable in fact therefore depends on whether they qualify as bona fide purchasers without notice. It is doubtful on the record before us that they do.[6] It is, however, unnecessary to decide that question, as we find defendants' counterclaim is time barred.

In so ruling we reject counterclaimants' procedural contention that plaintiffs have waived this defense by failing to plead it affirmatively in their answer to the counterclaim. See GCR 1963, 111.7. Both sides argued the issue of limitations at trial to the court. Any pleading error was thereby cured. *Star Steel Supply Co v White,* 4 Mich App 178; 144 NW2d 673 (1966); accord, *Hornack v Young,* 63 Mich App 650; 234 NW2d 746 (1975); *Krager v Harold E Hedler Storage, Inc,* 7 Mich App 644; 152 NW2d 708 (1967). See generally, *Bigelow v Walraven,* 392 Mich 566; 221 NW2d 328 (1974). While plaintiffs would have been more diligent if they had sought an amendment of their

---

[6] Plaintiffs had actual knowledge of the sale by Rita Carpenter to her brother and repurchase within one week. These were also matters of record. Although a subsequent purchase by an administratrix of land previously sold under license of the probate court is not per se invalid, *Ketchum v Ketchum,* 177 Mich 100; 143 NW 25 (1913) (sale to mother and repurchased same day legal under circumstances); *Otis v Kennedy,* 107 Mich 312; 65 NW 219 (1895); 13 Callaghan's Mich Pleading & Practice, § 105.28, pp 258-259, the proximity of the sale and repurchase should have raised a suspicion in plaintiffs' minds about the validity of the deeds. *Winter v Truax,* 87 Mich 324; 49 NW 604 (1891); *McKay v Williams,* 67 Mich 547; 35 NW 159 (1887). *But see, Otis v Kennedy, supra,* at 320-322; 65 NW at 221-222 (distinguishing *Truax and Williams).* Plaintiffs therefore would be held to the knowledge that could have been gained by a reasonable inquiry. *Otis v Kennedy, supra* at 322; 65 NW at 222.

pleadings to conform to the evidence under GCR 1963, 118.3, *Michner Plating Co v Davis Drilling Co, Inc,* 10 Mich App 358; 159 NW2d 366 (1968), their failure to do so does not change our result. 1 Honigman & Hawkins, Mich General Court Rules Anno, p 415; see GCR 1963, 118.3.

The nature of relief sought by counterclaimants is equitable. MCL 600.2932; MSA 27A.2932. The periods of limitation prescribed by the Revised Judicature Act apply to equitable actions of their own force. MCL 600.5815; MSA 27A.5815. The limitations period for actions to recover lands claimed by another through a deed made upon sale by an administratrix is five years. MCL 600.5801(1); MSA 27A.5801(1).

Whether measured from the date of the sale, see MCL 600.5827; MSA 27A.5827, or the death of the decedent, see MCL 600.5829; MSA 27A.5829, counterclaimants' rights of action accrued before the end of 1947. Thus, defendant Smith, who was of full age at that time, was barred from suing after 1952. Since defendants Mumby and DeWitt were minors, they had one year after reaching 21 to bring their actions, even if the statutory period had run. MCL 600.5851(1); MSA 27A.5851(1). This tolling provision did not affect Mumby's claim since she reached the age of majority (in 1948) more than one year before the period had terminated (in 1952). The other child, DeWitt, was 21 in 1953; her claim was therefore barred after 1954.

It is not clear that this ends the matter. In addition to applying the statute of limitations to equity actions, the code provides that the "equitable doctrine of laches shall also apply in actions where equitable relief is sought". MCL 600.5815; MSA 27A.5815. Two constructions of this language are plausible under Michigan case law.

One interpretation is that the prescribed period sets an outer limit, but an equity suit not barred under the prescribed period may nevertheless be barred by laches. This reading is consistent with this Court's decision in *Tray v Whitney,* 35 Mich App 529; 192 NW2d 628 (1971), and the Supreme Court's decision in *Smith v Davidson,* 40 Mich 632 (1879). The latter held that an action to set aside a conveyance under the self-dealing provision of the probate code, since it would have been barred at law, must also be barred in equity. The Court reasoned:

"The policy of the statute, which was to quiet all titles derived from such sales after five years' peaceable possession under them, cannot be evaded by the party electing one forum rather than another for litigating the rights which he disputes; but equity by analogy will apply the limitation to his case." 40 Mich at 633.

A subsequent Supreme Court case suggests that the doctrine of laches, under narrowly prescribed circumstances, may expand the period for bringing suit. In *Sequin v Madison,* 328 Mich 600; 44 NW2d 150 (1950), a unanimous Court found that "[c]ourts of equity accept the statute as fixing a proper period of repose for right in equity as well as at law and apply it *unless the suit is peculiarly equitable in nature or compelling equities are shown".* (Emphasis added.) *Id.* at 607; 44 NW2d at 152, quoting *Moross v Oakman,* 257 Mich 464, 466; 241 NW 181 (1932). The *Sequin* Court approved a flexible rule to be controlled by the peculiar circumstances of each case.

We have found no authority deciding whether § 5815 was intended to codify the *Smith* or *Sequin* result. From a policy point of view we prefer the *Smith* holding; yet, until we are told otherwise by

the Supreme Court, we cannot ignore the hue that *Sequin* casts upon the statute. Nonetheless, we find that counterclaimants have failed to show the absence of laches.

As the *Sequin* Court quoted:

> "Where one invokes the aid of equity, after apparently sleeping on his rights for a time equal to the statutory period of limitations, he must allege facts which excuse the delay and show strong equities in his favor." 328 Mich at 607; 44 NW2d at 153, *quoting Moross v Oakman,* 257 Mich 464, 466; 241 NW 181 (1932).

In this case counterclaimants apparently slept on their rights for a time far in excess of the statutory period. They did so with actual knowledge that their mother had administered Blake Carpenter's estate and with actual or constructive knowledge that she had sold and repurchased the Manistee property. While plaintiffs do not claim prejudice, it is apparent on the record that their case was hampered by the uncertainty of recollection of the interested parties. It was crucial, for example, to find a prearrangement between Rita Carpenter and her brother to reconvey the Manistee property, as a sale to a close relative and repurchase by the fiduciary is not conclusive of self-dealing.[7] The testimony strongly intimated and circumstantially evidenced such a secret agreement,[8] but no one could say for sure. Rita Carpenter, who among all the witnesses would have been in the best position to know of such a deal, could not recall precisely how the transaction occurred.

---

[7] *See* note 6, *supra.*

[8] On direct examination, plaintiffs' attorney asked Rita Carpenter why she did not just buy the property herself. She responded, "Well, I think I couldn't. According to the Probate Judge, I couldn't buy it."

On these facts it would deeply contravene the policies of MCL 600.5801(1); MSA 27A.5801(1) to undo the sale at this late date.

Under the circumstances, counterclaimants' delay in bringing suit also amounts to a ratification and acquiescence in the sale. *Egan v Grece,* 79 Mich 629; 45 NW 74 (1890), *Campau v Van Dyke,* 15 Mich 371 (1867), 31 Am Jur 2d, *Executors and Administrators,* § 388, p 188.

Counterclaimants seek to excuse their delay on several theories.

First, they claim ignorance of their right to sue until Shell advised them in 1973. As a general rule such ignorance does not postpone the commencement of the limitations period. 51 Am Jur 2d, *Limitations of Actions,* § 146, p 715. An exception has been recognized when "the *fact* of the invasion of a right" is undiscovered. (Emphasis added.) *Id.* at 716. The trial court found that "defendants * * * were not aware of the [facts] until 1973". *Sequin,* however, approved of the holding in *Moross* that an allegation by a party that he "did not discover the facts 'until lately' is too general and indefinite to show the absence of laches." 328 Mich at 607; 44 NW2d at 153, *quoting* 257 Mich at 466; 241 NW at 181. Moreover, the trial court's finding is clearly erroneous; it is apparent from the trial transcript that counterclaimants were aware of the circumstances of the sale. Exercising reasonable viligance, they could have known long before 1973 that on these facts they had rights in the Manistee property.

Defendants next seek to excuse their delay because of the family relationship of the parties, citing *Backus v Backus,* 207 Mich 690; 175 NW 400 (1919). The presence of a family relationship is entitled to great weight in the laches determina-

tion, "not only because [relatives] may naturally and commendably be reluctant to engage in litigation, but also because they ought to be able to rely more on substantial justice being voluntarily done by a member of the family than by a stranger". *Wright v Wright,* 37 Mich 55, 56 (1877). Relatives, however, cannot be excused from suing indefinitely, without making any attempt to settle the claim beforehand. *Backus* is distinguishable on this point. While the Court in that case gave equitable relief to a plaintiff who had delayed five years in suing his brother, it noted, in addition to the family tie, that plaintiff during the first three years of that period repeatedly had attempted to solve the dispute out of court. See generally, Anno: *Settlement Negotiations as Estopping Reliance of Statute of Limitations,* 39 ALR3d 127.

Counterclaimants also argue that any theory of limitation is inapplicable in this suit because Rita Carpenter was acting as their fiduciary. Since an administratrix by definition is a fiduciary for the heirs of the estate, counterclaimants in effect would have us read code § 5801(1) as providing: "When the defendant claims title * * * through some deed made upon the sale * * * by an * * * administrator * * * the period of limitations is five years [unless the suit is by an heir in which case no period of limitations is applicable]". We find this position untenable. First, it is clear that our Supreme Court has applied the doctrine of limitations in suits by heirs to set aside a conveyance by an administrator. *E.g., Smith v Davidson, supra.* Second, the gaping hole we would have to cut into MCL 600.5801(1) to apply counterclaimants' exception would seem to conflict with the subsection's plain meaning. Third, the rule relied on by counterclaimants has been misstated. The statute of

limitations is not inapplicable to any claim which accrues while a fiduciary relationship existed between the parties. The correct rule is that the period of limitations does not begin to run until the fiduciary relationship ends—that is, until all the fiduciary's duties have been discharged or repudiated. See *O'Toole v Hurley,* 15 Mich 517, 521; 73 NW 805, 806 (1898); *cf.* 76 Am Jur 2d, *Trusts,* § 587, pp 794-795. In this instance, the fiduciary relationship ended when all affairs of the estate were wound up and the minor children released Rita Carpenter as their guardian substantially before the period of limitations had run.

Lastly, counterclaimants contend that their suit cannot be time barred because the deeds out by and back to Rita Carpenter were nullities and, therefore, never divested counterclaimants of their interest in the property. We have already answered that argument by our conclusion that the deeds did pass voidable title.

Reversed. Judgment entered for appellants. Costs to appellants.