## ABBOTT ET AL. *v.* GODFROY'S HEIRS.

In foreclosing a mortgage against the heirs of a deceased mortgagor, the personal representative of the deceased is not a necessary party, unless the personal estate is sought to be charged with a deficiency in the mortgaged premises to pay the debt.

An agreement in writing, intended by the parties to give a lien on real estate for the payment of a debt, though not witnessed as required by statute, to convey real estate, is good as an equitable mortgage..

The territory comprising the present state of Michigan remained under the control and jurisdiction of the British government until the year 1796; and the Ordinance of 1787, though made before that year, was not in force while the territory was under such jurisdiction.

Where the bill charges an instrument to be a mortgage, asks to have it foreclosed as such, and contains a prayer for other or further relief, the court may declare it to be a mortgage, although there be no special prayer for that purpose in the bill.

Lapse of time, in connection with non payment of interest and continued possess-

Abbott *et al. v.* Godfroy's Heirs.

sion of the mortgagor, unaccompanied by any effort on the part of the mortgagee to enforce payment, is not a legal but an equitable or presumptive bar, and the presumption may be rebutted by circumstances. What circumstances will rebut the presumption, must depend upon the facts in each particular case.

In cases of presumptive bar from lapse of time, the rule as to subsequent disabilities is different from that of the statute of limitations. Under the statute, the party must bring himself within the exceptions of the statute ; whereas, in cases of presumptive bar, he may show any circumstance that outweighs the presumption.

On June 18, 1789, the ancestor of the defendants gave a mortgage, payable on 28th August, 1790. The mortgagee died in 1790, but administration on his estate was not granted until 1835, and the year following a bill was filed to foreclose the mortgage. *Held,* the presumption of payment arising from lapse of time was overthrown by the fact that there was no one, from the death of the mortgagee, in 1790, until administration was granted in 1835, who could receive payment of the money and discharge the mortgage.

APPEAL from the Court of Chancery. A bill was filed in that court by complainants in January, 1836, to foreclose an alleged hypotheque or French mortgage given by G. Godfroy, the defendants' ancestor, on the 18th June, 1789, to one Duperon Baby, to secure the payment of £396 0s. 3d., New York currency, on the 28th August, 1790. The bill stated the making of the instrument before a notary public, and that without any acknowledgment it was recorded in the county of Wayne in the year 1798; the death of Duperon Baby in the year 1790, and that no proceedings to take out administration on his estate were had until 1835, when administration, on the 12th September of that year was granted to Jean B. Baby, who on the 30th of the same month assigned the instrument to complainants. It further stated that the money mentioned in the instrument was unpaid, principal and interest; that G. Godfroy died in the year 1833, and that he frequently recognized the existence and legal validity of the instrument.

The court below dismissed the bill on the ground of the staleness of the demand, and that complainants had failed to establish and prove any facts or circumstances to take the case out of the opeartion of the general rule of presumption of payment from lapse of time. From this decree the complainants appealed to this court. The case made by the pleadings and evidence is fully stated in the opinion of the court.

*Fraser & Davidson,* for appellants.

*Backus & Sibley,* for appellees.

*By the Court,* MILES, J.   On the 18th day of June, 1789, Gabriel Godfroy executed an instrument in writing, before a notary public and in the presence of a subscribing witness, by which he acknowledged himself to be justly indebted to one Duperon Baby in the sum of £396 0s. 3d., for value received from him, and which he promised to pay to him on the 28th day of August, 1790, with interest at six per cent.   And in order to secure the payment of this sum, Godfroy by the same instrument assigned and mortgaged a farm in the township of Springwells, on which he then resided, and declared that the same should remain mortgaged to Baby, his heirs and assigns, as a security for that sum and interest until payment in full should be effected.

Duperon Baby died in 1790; and in 1835, in virtue of a special act of the legislature of this state, administration of his estate was granted to Jean Baptiste Baby his son, who on the 13th day of September of that year assigned this instrument to the complainants, and on the 27th day of January, 1836, they filed a bill in chancery to foreclose it as a mortgage.

Gabriel Godfroy died in 1833, and his administrators were, with his heirs, made parties, defendants to the bill; but after answer put in by one of the administrators, the bill was voluntarily dismissed as to them.

The remaining defendants now insist that the administrators are necessary parties; and the complainants having dismissed their bill as to them, cannot have a decree.

In England, except in cases where, on account of the insufficiency of the security in the mortgage, the bill prays an account of personal property as well as a sale of the land, the personal representative is held not to be a necessary party; and in such case, not on account of a prayer for a sale of the land, but because the party, in addition to the land, seeks to approprtate the personal assets to the payment of the debt.

The bill being only to foreclose the equity of redemption, the heir having the equity is the only necessary party.   Edw. on Parties, p. 91, sec. 41, and the cases there referred to.   1 Smith's Ch. Pr. 541.

Though the result of a proceeding in chancery in England to en-

force the lien is generally a strict foreclosure, and although we in practice substitute a sale, yet the difference in the result does not change the character of the proceeding, which in both cases has in view the satisfaction of the debt.

If this bill sought to appropriate the personal assets of the estate to that object, the administrators, as representing those assets, would be a necessary party, having an interest. 4 Blackf. R. 381. This case having been decided under a statute similar to our own, is in point. It was held, the administrator was an improper party to a bill of foreclosure.

The provision of our statute,‟₃ making real estate assets for the payment of debts, gives no preference over specific liens before created on the land.

Mr. Edwards, in his treatise on Parties in Chancery, before referred to, says, " in New York some practitioners make the executors parties, and join the heir with them, but this is incorrect; the heir is the only necessary party:" p. 91, sec. 41.

It is next objected, that this instrument is not a mortgage at common law, and that it was made after the Ordinance of 1787 was in force in this territory; and that, since that time, lands in Michigan could only be sold or encumbered by a deed, signed, sealed and attested by two witnesses. Ordinance of 1787, sec. 2. If this is a good equitable mortgage, that is an answer to at least the first of these objections; and as to the latter, it may be replied, as a matter of history, that the territory comprising this state remained under the control and jurisdiction of the British government until the year 1796, and that the Ordinance, though made before, was not in force until after that time.

The agreement in writing in this case is express in its terms; the intention of the parties is most manifest. The contract is not to be performed, but is executed. The meaning and intention was to create a lien on the land, to secure the payment of a pre-existing debt. The transaction is not obnoxious to the objection that parol evidence is necessary to establish the claim, for the instrument itself states its object; and however much the policy of enforcing, as an equitable mortgage, the deposit of title deeds with a parol agreement to perfect a legal security, may have been questioned, here no objection of that character exists: the intention is evident, and all the court have to do is to supply the legal deficiencies. See 3d Powel on Mortgages, 1049, and the

cases there cited, in which express written agreements have been declared equitable mortgages.

But it is also insisted, that we cannot declare this instrument to be a mortgage because the complainants have not so prayed. The bill expressly charges that this instrument was intended *as* a mortgage, and asks to have it foreclosed *as such*, and contains the usual prayer for other or further relief. In a case where the defendant has submitted to answer, and where the case made by the bill warrants this decree, we see no objection to it for the reason assigned.

The next ground of defence is a presumption of payment arising from lapse of time. The defendants claim that this is a stale demand and that for this reason a court of equity will not enforce it, but will presume it has been satisfied. One of the heirs sets up this defence in his answer: the other defendants, some of whom are minors, have put in only a general answer, denying all knowledge of the matters stated in the bill.

Lapse of time, in connection with non payment of interest and a continued possession of the mortgagor, unaccompanied by any effort on the part of the mortgagee to enforce payment, would warrant a presumption of payment of the debt. This would operate as a satisfaction of the mortgage, and thus give repose to the title. This, however, is not a legal bar, but an equitable, a presumptive one, depending upon a principle co-existent with the earliest jurisdiction of a court of equity, without aid from any act of parliament; and courts of equity, by their own rules, give great effect to the length of time. Smith *v.* Clay, 3d Bro. Ch. R. 640, in note.

All the authorities agree that this presumption may be rebutted by circumstances. 4 Munf. 532; 4 Har. & McHen. 328; 16 John. Ch. R. 214, and the cases there referred to. And although there is some conflict as to the point whether the defendant must insist upon the bar, or whether the plaintiff, in a case bringing him within the rule, shall be required to state the circumstances which repel the presumption, the better opinion seems to be, that such circumstances as entitle the party to relief, notwithstanding the lapse of time, should be stated in the bill. Foster *v.* Hodgson, 19 Ves. 180; 9 Peters 415.

Here the lapse of time appears upon the face of the bill, which admits that no part of the money has been paid: and as if recognizing

he rule which we have just mentioned, it goes on to state such circumstances as are claimed to be sufficient to outweigh the presumption, and still entitle the party to relief. The defendants deny all knowledge of these circumstances, and we think properly, and put the complainants upon the proof of them.

A question is also made as to the character of the evidence by which this presumption is to be met and overthrown, the complainants insisting that slight circumstances are sufficient for this; the defendants, on the other hand, contending, upon the authority of several cases referred to, upon a bill to redeem, that the evidence should be clear, unequivocal, proceeding from witnesses unimpeachable, and upon the whole of the most satisfactory character.

I can see no propriety in making the distinction insisted upon by the complainants, between the evidence necessary to rebut presumption of a grant, from lapse of time, and that required to outweigh a presumption of payment, from the same cause. In case of a mortgage the presumption is adopted as a rule of evidence for the same purpose in both instances, to wit: the repose of the title.

It may be safely remarked, however, that the earliest cases in which parol evidence of facts and circumstances to meet such presumption, was offered, were upon bills to redeem; and it was for some time doubted whether such evidence should be received, and it was not finally determined that it was competent until the case of Reeks *v.* Postlethwaite, Cooper's Ca. in Ch. 164. That was a bill filed to redeem a mortgage, forty-nine years after the date of the mortgage, forty-three years from the time possession was taken by the mortgagee, and thirty-nine years from the time of the plaintiff coming of age.

In determining whether parol evidence is competent for this purpose, the vice chancellor has occasion to consider the rule as to twenty years barring the redemption, and declares it to be not an absolute rule, but a qualified rule, depending altogether upon circumstances. After referring to several cases in which the rule is departed from, as where there have been disabilities of the party, as infancy, coverture, beyond sea, and not only in cases of disabilities, but in receiving interest, keeping accounts, treating it in any wise as a deed or mortgage, he says; that "such acts, and others of the sort, are sufficient to take the case out of the rule, and which may be solemn and deliberate acts or not, accord-

ing as the party is attending or not attending to what is doing." "There must be evidence that it is a subsisting mortgage."

What precise act, then, will be sufficient? The answer must be, *any* precise act. The acts need not be done with the other party; the mere *ex parte* acts of the mortgagee will be sufficient. Whether the presumption is rebutted, may depend upon a variety of circumstances, and must depend upon the facts in each particular case, as tending to justify or excuse the delay. 16 John. R. 214.

Anything is sufficient which repels the presumption that a man is always ready to enjoy his own, as that the party is a near relative. 12 Ves. 266.

The circumstances to induce a belief that this was a subsisting debt, are, that the mortgage was recorded in 1798, about eight years after Baby's death, and two years after his family left this territory and removed across the Detroit river into the province of Upper Canada; and that as late as 1819, Godfroy sent a message to the heir, which is insisted to be clearly referable to the mortgage. Peter Godfroy, the witness, then lived at home with his father Gabriel Godfroy on this farm, and the message sent by him to Baby was, to come over the river, as they were about to levy on the farm.

There is no evidence to show that Baby had any other interest in this farm than by way of this mortgage; and holding that, and of so ancient a date, it was but natural Godfroy should wish to have him present to assert his claim when the levy was made. These things are strong to show an intention on the part, both of the heirs and of Godfroy, to keep the mortgage on foot for some purpose—for what purpose is now immaterial, if they treated it as a subsisting mortgage, which we think the evidence shows they did. The bill was filed within twenty years after this. But if we are mistaken in the inference drawn from these facts, there is still another view of the case not inconsistent with the one we have been considering, which will bring us to the same conclusion.

It seems to be conceded in this case, that the general period which has been adopted for presumption of satisfaction of a mortgage is twenty years. The complainants contend that this period should commence from the time of administration granted, and not from the time the debt fell due; that until then there was no person competent to sue. Mur-

ray *v.* The East India Company, 5 Barn. & Ald. 204, is in point to show that where the cause of action accrues *after* the death of the intestate, the period of the statute of limitations commences from the time of administration granted, and for the reason that there is no person to sue until the administrator qualifies. This reason fails where the debt falls due before the death. In such case there is a person capable of suing, and a subsequent disability will not take the case out of the statute. 16 John. R. 214.

It does not appear, from the evidence in this case, whether Baby died before or after the day when this demand fell due. It is not affirmatively shown that he died before that time, and the evidence seems to be insufficient to bring the case within the principle of Murray *v.* The East India Company. But in case of a presumptive bar from lapse of time, the rule as to subsequent disabilities is different from that under a positive bar created by the statute. 16 John. R. 214.

In a case under the statute, the party, to avoid its effect, must bring himself within some of its savings; whereas, in a case like the present, he may show any circumstances which outweigh the presumption.

It seems to be well settled, that mortgages being part of the personal estate, belong to the personal representatives of the mortgagee after his death, and not to his heirs. See 7 Bac. Ab., Tit. Mortg. E. p. 84, and the cases there referred to, which show that in this matter equity follows the law; that the money shall go into the personal estate, because it came out of it, and that the land is a mere pledge.

The executor of a mortgagee is a proper person to file a bill to foreclose. Where a reconveyance is required, the heir must also be made a party, but for that purpose only. It only remains necessary to apply this principle to the case before us.

It appears that from the time of the death of the mortgagee in 1790 until the appointment of the administrator in 1835, there was no person to whom payment could be made, who was authorized to discharge the debt. Payment to the heir would have been no protection against an action by an administrator, subsequently appointed.

The period, then, if any existed, in which payment could have been made, before administration, was in the year 1790, between the time

when the debt fell due and the death of Baby, but this not being shown affirmatively, we cannot intend it.

If that fact was necessary to meet the circumstances set up by the complainants to overthrow the presumption or to render them insufficient for that purpose, the defendant should have proved it. If, then, we are correct in this view, it would seem that, although the general presumption of payment arises from lapse of time, still, if it appears that payment was impossible, that must repel and overthrow such presumption.

From lapse of time during which payment ought to have been made, arises a presumption that it was made: this is met by evidence that the parties were so situated that it could not be made. This gives the defendants the full benefit of the presumption, and puts the complainants upon proof *aliunde,* to show why payment was not made. So a period during which a plaintiff is disabled to sue has been repeatedly held to be properly deducted from the time necessary to make out the presumption. 10 John. R. 417; 16 id. 214.

But it was said, if this was a subsisting debt, administration would not have been so long delayed. To this it might be replied, and equally well, if the demand had been paid, administration would never have been taken, unless we say, what we have no right to say, that there were other demands owing to the estate, of which we have no evidence. This delay to administer, in my judgment, proves nothing one way or the other.

Upon the argument, great stress was laid upon the staleness of the demand, and the consequent disfavor the case would receive in a court of equity. It is true the court does not countenance or encourage negligence, and why? because that negligence furnishes evidence upon which to build a presumption that the right claimed has been abandoned.

It is said that lapse of time is permitted in equity to defeat an acknowledged right, on the ground only of its affording evidence of a presumption that such right has been abandoned. It never prevails where the presumption is outweighed by opposing facts and circumstances. Nelson *v.* Cunningham, 4 Munf. 532; 3 Har. & McHen. 328.

Having come to the conclusion that the delay in this case is account-

ed for, upon legal principles, it would be equally inequitable to with-hold relief upon this claim, as it would upon one of a more recent date.

It results from this, that the decree of the chancellor dismissing the bill must be reversed.

*Decree reversed.*