DEITZ v. DEITZ.

1. PARTNERSHIP—DEATH—ACCOUNTING—STALE CLAIMS—LACHES.
    In suit to establish a partnership in trucking business between plaintiffs and their late brother, defendant's decedent, from 1931 until latter's death in March, 1939, where a partnership did exist for a time, commencing in 1931, but had ceased before application for individual permit to transport cement had been made in 1934 by decedent, claim for accounting by surviving brothers was stale and barred by laches where advanced after brother's death although date of dissolution was not definitely proved.

Laches, see Restatement, Restitution, § 148.

2. Executors and Administrators—Accounting—Laches.

A court of equity will not permit accounts to be overhauled in favor of a party who has slept upon his rights, without just cause, for a great number of years; and more especially as against the representatives of a party who may be supposed to have had the means of defense in his lifetime, but who may have left his successors without the requisite vouchers.

3. Equity—Maxim as to Vigilance.

The law assists those who are vigilant, not those who sleep upon their rights.

4. Accounting—Laches.

No inflexible rule can be prescribed as to the lapse of what period of time shall disentitle a suitor to an account and each case must be controlled by its own peculiar circumstances, but a decree should be denied in every case where it clearly appears the party seeking it has, by his laches, rendered it impossible for the court to do full justice to both parties, whether the infirmity of the case consists in the death of a party, loss of evidence, or other cause.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted April 11, 1941. (Docket No. 55, Calendar No. 41,521.) Decided June 2, 1941.

Bill by Walter M. Deitz and Louis R. Deitz against Neta M. Deitz, administratrix of the estate of Fred H. Deitz, deceased, to declare a partnership and for an accounting. Bill dismissed. Plaintiffs appeal. Affirmed.

*Henry L. Wierengo,* for plaintiffs.

*Alexis J. Rogoski,* for defendant.

Wiest, J. Plaintiffs seek a decree holding that a partnership in the trucking and hauling business existed between them and their deceased brother, Fred H. Deitz, from 1931 to March, 1939, when Fred died, and to have the administratrix of his

estate come to an accounting of the partnership affairs.

The circuit judge was unable to find the existence of such a copartnership and dismissed the bill. Plaintiffs review by appeal.

In 1931 the brothers owned some trucking equipment and there was thought of forming a copartnership. November 12, 1931, an application was filed with the public utilities commission by Deitz Brothers, as a copartnership, for a permit to operate as a contract carrier between Muskegon and other points, intrastate. March 2, 1932, there was filed with the Muskegon county clerk a certificate of formation of a copartnership, to be conducted under the firm name of Deitz Brothers Trucking Company. September 30, 1936, Fred Deitz filed in the office of the Muskegon county clerk a sworn statement that the copartnership had been dissolved. The permit to the copartnership to operate as carriers was granted June 23, 1932, expired September 18, 1932, and was not renewed. August 10, 1934, Fred Deitz applied for a carrier's permit in his own name and set forth therein, in the statement of ownership, that the two vehicles listed in the application were leased by him from Walter Deitz. The permit was granted October 5, 1934, to Fred Deitz, individually, and under renewal applications the permit to him, as an individual, continued until his death on March 25, 1939. July 6, 1939, Neta Deitz, as administratrix of his estate, applied for and, October 11, 1939, was granted a permit authorizing the transportation of cement for the Huron Portland Cement Company between Muskegon and points within a radius of 150 miles thereof, intrastate. This was to enable her to carry out the contract between Fred Deitz and that company. That contract was made by Fred

Deitz, termed therein the trucking company, July 28, 1934, and required the trucking company to carry workmen's compensation insurance on all employees engaged in the trucking service. Such insurance was taken out by Fred Deitz in the summer of 1934, and Louis and Walter Deitz were scheduled as employees. Fred Deitz, as employer, under the social security act, reported taxable wages paid by him to Walter and Louis Deitz, as employees.

If there ever was a copartnership in fact between the three brothers it was of short duration and had ended long before Fred Deitz filed the certificate of dissolution in September, 1936. Convincing evidence of this appears from the testimony of James Vander Sys, who worked for Fred Deitz as bookkeeper from June, 1937, to the time Mr. Deitz died, and supplemented by record evidence produced by him. From that testimony we quote the following:

"Walter Deitz was employed by Fred Deitz during that time. He worked as trucker during the summer time and during the winter he helped out in the garage and assisted the mechanic, did other things in the line of maintenance. Walter owned a tractor, a semi, and a four wheeler, and at one time he owned another tractor and another semi. Just before Fred died he had five pieces of equipment. These, at various times, were certified under Fred's permit and were designated as leased equipment. Walter received 85 per cent. of the gross revenue for the use of his equipment. When he was employed as a garage hand during off hauling seasons, he was paid by the hour, at the rate of 55 cents. We had an account payable that was titled 'Walter Deitz,' and he was credited for his hauling and debited for his various advances and charges that he made to the Fred Deitz Trucking Company. We usually had a journal there and we listed all his loads in that particular journal and at the end of the

month we would enter the total, then if we advanced him money for any purpose, that would be charged against that same account, and deducted from the amount that we ultimately paid him. Payments were usually made in check, deductions were made from his pay for the purpose of paying social security taxes. We always made out a slip showing the social security deductions there and he received these slips. He was carried on the schedule of employees for workmen's compensation insurance. Walter never made any claim that he was a partner in the business in the presence of Fred Deitz nor during the life of Fred Deitz. The first time that I heard him make that claim was after Fred's death.

\* \* \*

"I have totaled Walter Deitz' earnings from his hauling activities. The total for the year 1936 was $3,585.38. The total for the year 1937 was $2,768.79. Total for the year 1938, $4,989.66. The total for the three years $11,343.83. I also have the yearly totals of the money that was paid to him on an hourly basis. For the year 1936—$25.50. For the year 1937—$55.25. For the year 1938—$227.72. For the year 1939—$169.40. \* \* \*

"Louis, or Bill Deitz, was employed as mechanic. When I first went to work for Fred he was paid $5 a day. In June or July, of 1938, he had a raise in pay and he started working by the week then and he was paid $35 a week. I do not recall that he ever made any claim during the lifetime of Fred Deitz that he was a partner. He took orders from Fred Deitz. He was included in the social security deductions. He was also included on the workmen's compensation schedule as an employee. I have a schedule as to his yearly earnings. The total for the year 1936—$1,435, 1937—$1,515, 1938—$1,581.66. Total for the year 1939, to March—$420. Total for that period of time $4,951.66. I was never requested during that period by any one of the three Deitz brothers to make out a copartnership return. Fred

Deitz himself reported the earnings of the company as his individual income. I have here the checks found in the records for the year prior to the setting up of the books which were paid to Louis Deitz by Fred Deitz.''

The evidence leads to the conclusion that there was a copartnership between the brothers, commencing in 1931, but we are unable to state the terms and conditions thereof. Judging from the acts of the parties the copartnership relation had ceased before Fred Deitz applied for and was granted the individual permit in 1934 to transport cement.

The claim for an accounting is stale. While, in the absence of definite proof of the date of dissolution in fact of the copartnership, we cannot apply the statute of limitations as in *Jenny* v. *Perkins,* 17 Mich. 28, and *Dowse* v. *Gaynor,* 155 Mich. 38, we can and do apply the doctrine of laches in bar of the accounting sought.

As said in *Stout* v. *Seabrook,* 30 N. J. Eq. 187, 190, 191 (affirmed 32 N. J. Eq. 826):

''A court of equity will not permit accounts to be overhauled in favor of a party who has slept upon his rights, without just cause, for a great number of years; and more especially as against the representatives of a party who may be supposed to have had the means of defense in his lifetime, but who may have left his successors without the requisite vouchers. * * * The justice of this doctrine is obvious. He who delays asserting his rights until the proof in vindication of them is so indeterminate that it is very difficult to decide whether what seems to be justice to him is not injustice to his adversary, ought to lose all right to the aid of a court of conscience, for, by his laches, the path of justice has become so obscure that it cannot be traced with certainty. The law assists those who are vigilant, not those who sleep upon their rights.

"No inflexible rule can be prescribed as to the lapse of what period shall disentitle a suitor to an account.  *  *  *  Each case must be controlled by its own peculiar circumstances, but I think it may be laid down as a safe general rule that a decree for an account should be denied in every case where it clearly appears the party seeking it has, by his laches, rendered it impossible for the court to do full justice to both parties, whether the infirmity of the case consists in the death of a party, loss of evidence, or other cause."

For the reasons stated the decree dismissing the bill is affirmed, with costs to defendants.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, and BUTZEL, JJ., concurred. McALLISTER, J., took no part in this decision.