GUSTIN v. ALPENA POWER CO.

1. QUIETING TITLE—LOST DEEDS—LACHES.

In suit to quiet title to two 40-acre parcels of land to which defendant has tax deeds and a quitclaim deed from heirs of party from whom plaintiff lays claim of title under deed alleged to have been delivered to him pursuant to land contract but which deed was lost before being recorded, decree quieting title in defendant is not disturbed where plaintiff, even if he had title, knew defendant had paid taxes on the land and exercised many other acts of ownership without protest or assertion of ownership by plaintiff for over 30 years.

2. EQUITY—MAXIM AS TO VIGILANCE.

The law assists those who are vigilant, not those who sleep upon their rights.

Appeal from Alcona; Dehnke (Herman), J. Submitted October 5, 1943. (Docket No. 6, Calendar No. 42,386.) Decided November 29, 1943.

Bill by Henry K. Gustin against Alpena Power Company to quiet title to land. Cross bill by defendant against plaintiff to quiet title to land. Decree for defendant. Plaintiff appeals. Affirmed.

*Henry K. Gustin,* in pro. per.

*Carl R. Henry,* for defendant.

CHANDLER, J. Plaintiff filed his bill of complaint to quiet title to two 40-acre tracts of land located in Alcona county. The property in question was

formerly owned by one C. B. Williams who acquired title through Bernice Herrick, the heir of one Thomas G. Spratt.

On March 3, 1904, plaintiff entered into an agreement with Williams, for a consideration of $500, whereby Williams agreed to sell to plaintiff his interest in certain lands described in plats attached to the agreement, together with his interest in a certain agreement existing between himself and Bernice Herrick, whereby he, Williams, was to acquire title to any lands formerly owned by Thomas G. Spratt which had not theretofore been conveyed to him by the said Bernice Herrick. This agreement was never recorded. Plaintiff claims that pursuant to this agreement he received a deed to the disputed land but that the instrument of conveyance had become lost or destroyed before it was recorded.

Defendant's chain of title commences with a deed dated April 20, 1908, from Frank H. Christian and wife. It is conceded that Christian and wife did not have the record title to the premises when this deed was given, but defendant claims that it was perfected in 1940 when it obtained a quitclaim deed from the heirs of C. B. Williams. The defendant also has tax deeds dated June 11, 1908, for taxes for the years 1888 to 1903, applying to both 40-acre parcels, and a tax deed for the taxes of 1905, applying to one of the 40-acre parcels. Plaintiff claims, however, that the tax deeds are of no importance because no notice of reconveyance was given by the grantee after receiving the deeds.

The record shows that from 1916 to 1940 defendant paid the taxes on the land, a fact of which plaintiff was aware, but explained by him with the statement that he was satisfied if defendant wanted to pay taxes on his land. In addition, defendant exer-

cised many other acts of ownership during the years such as cutting and selling the pulpwood, granting trapping privileges and mortgaging the land. During all the time in question, plaintiff made no protest and asserted no claim that he was the owner of the property until about April 2, 1941, the date of the filing of the bill of complaint herein.

Defendant filed an answer to the bill of complaint and prayed for affirmative relief in the nature of a cross bill. The trial court dismissed plaintiff's bill of complaint and entered a decree quieting title in defendant under the prayer of the cross bill. Plaintiff appeals.

The decision of the trial court is based on two grounds. He held that plaintiff had not satisfactorily established that he ever received a deed from Williams to the land involved, but that if he had, his present claim was barred by laches.

The only testimony relative to the delivery of a deed was that given by plaintiff, which the trial court did not care to accept because of plaintiff's delay in asserting his claim. The court said:

"Aside from the question of laches and its legal effect, plaintiff's unexplained failure to assert his present claim while Williams and his wife, and the witnesses and acknowledging officials were alive and available, definitely indicates that he is mistaken if he has now convinced himself that he ever had deeds to these descriptions."

The record presents no reason for disturbing the foregoing finding, but, assuming, as did the trial court, that plaintiff did receive a deed, the defense of laches is clearly applicable. This theory is so well entrenched that citation of authority would appear unnecessary. Plaintiff slept on his rights for more than 30 years, during which time he knew de-

fendant had a deed under which it was claiming ownership and during which time he was aware of the acts of defendant indicating a claim of ownership.

In *Deitz* v. *Deitz,* 298 Mich. 253, quoting from *Stout* v. *Seabrook,* 30 N. J. Eq. 187, 191 (affirmed 32 N. J. Eq. 826), we said:

"He who delays asserting his rights until the proof in vindication of them is so indeterminate that it is very difficult to decide whether what seems to be justice to him is not injustice to his adversary, ought to lose all right to the aid of a court of conscience, for, by his laches, the path of justice has become so obscure that it cannot be traced with certainty. The law assists those who are vigilant, not those who sleep upon their rights."

The decree is affirmed, with costs to defendant.

BOYLES, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.