MONGER v. MONGER.

1. EQUITY—CANCELLATION OF INSTRUMENTS—STATUTE OF LIMITATIONS—EXCUSE FOR DELAY.

Record in suit for cancellation of deed by elderly uncle to nephew and wife for care, keep and burial, failed to sustain defendants' claim for relief under cross bill for accounting as to transactions which occurred some 25 years previously in the absence of any reason being advanced for delay equal to period of statute of limitations (CL 1948, § 609.13 *et seq.*).

2. SAME—STATUTE OF LIMITATIONS—EXCUSE FOR DELAY—PLEADING.

One invoking the aid of a court of equity after lapse of period equal to that provided in the statute of limitations must allege facts excusing the delay and show strong equities in his favor (CL 1948, § 609.13 *et seq.*).

3. APPEAL AND ERROR—CANCELLATION OF INSTRUMENTS—CONSIDERATION—EVIDENCE.

In equity suit to set aside deed wherein defendants claimed right to show consideration therefor was an obligation of plaintiff to defendant husband which had been outlawed for many years, the reception of such testimony subject to objection based on the statute of limitations did not prejudice defendants since it may be given the consideration to which it was entitled (CL 1948, § 609.13 *et seq.*).

4. CANCELLATION OF INSTRUMENTS—PLEADING—BURDEN OF PROOF.

In suit to cancel deed given by elderly plaintiff to defendant nephew and his wife of 16-acre farm in return for their

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 9 Am Jur, Cancellation of Instruments, § 45; 19 Am Jur, Equity, §§ 500, 502.
[4] 9 Am Jur, Cancellation of Instruments, § 60.
[5] 2 Am Jur, Appeal and Error, § 2; 3 Am Jur, Appeal and Error, §§ 815, 895, 896.
[7–9] 9 Am Jur, Cancellation of Instruments, § 31.
[7–9] Remedy of rescission for grantee's breach of agreement to support grantor. 112 ALR 670.
[9] 9 Am Jur, Cancellation of Instruments, §§ 39–41.

agreement to care for plaintiff for the remainder of his life, pay his doctor bills and expenses of his burial, plaintiff has the burden of establishing the material allegations of his bill.

5. APPEAL AND ERROR—CANCELLATION OF INSTRUMENTS—DE NOVO REVIEW—FINDINGS OF TRIAL JUDGE—WITNESSES.

On appeal in suit to cancel a deed the Supreme Court hears the case *de novo* but gives due consideration to factual findings of the trial judge since he has the advantage of seeing the witnesses in court and listening to their testimony as they gave it.

6. EQUITY—ISSUES OF FACT—WEIGHT OF EVIDENCE.

Determination of factual issues in an equity suit depends upon the weight to be given the testimony of the parties where their testimony is in direct conflict.

7. DEEDS—CONSIDERATION—EVIDENCE.

Finding that consideration for elderly plaintiff's deed of his 16-acre farm to defendant nephew and wife was latter's agreement for care and support *held,* sustained by record in suit to set deed aside showing they moved into plaintiff's home and lived there for 4 years before leaving.

8. CANCELLATION OF INSTRUMENTS—BREACH OF CONTRACT.

In grantor's suit to cancel deed to 16-acre farm he had given to defendant nephew and wife some 4 years theretofore in consideration of their agreement to take care of him, pay his medical expenses and give him a decent burial, evidence supported finding of trial court that defendants breached the contract by failing to give him the support he was entitled to, where it appears they knew plaintiff was advanced in years, not in good health and at times irritable and upon short notice left him in care of others after selling some of the farm equipment.

9. SAME—IMPROVEMENTS—EVIDENCE.

Cancellation of deed to farm, given to defendants in return for agreement to support elderly plaintiff grantor, pay his medical bills and provide a decent burial, is not conditioned on compensating them for improving the property where no proof is made as to enhancement of value of the property because of the alleged improvements nor their nature or extent.

Appeal from Berrien; Westin (Edward A.), J. Submitted March 17, 1950. (Docket No. 37, Calendar No. 44,652.) Decided April 3, 1950.

Bill by Joseph H. Monger against Dwight M. Monger and wife for cancellation of a deed. Decree for plaintiff. Defendants appeal. Affirmed.

*Charles W. Gore,* for plaintiff.

*Russell J. Taylor,* for defendants.

CARR, J. This suit in equity was instituted by the plaintiff for the cancellation of a deed by which he had conveyed to defendants approximately 16 acres of land in Berrien county. The bill of complaint alleged that the sole consideration for the conveyance was an agreement between the parties that defendants would care for the plaintiff during the remainder of his life and pay his doctor bills and the expenses of his burial, and that defendants breached the agreement and refused further performance thereunder. After listening to the proofs of the parties the trial court determined the controversy in favor of the plaintiff and rendered a decree granting the relief sought. Defendants have appealed.

The instrument in question was prepared and acknowledged on May 24, 1943, shortly after the death of plaintiff's wife. In terms it reserved to plaintiff the use, income, and rents of the premises during his lifetime. On the trial plaintiff did not claim he had discussed the matter with defendants prior to preparing the deed, but testified that before making delivery he had a conversation with defendant Dwight M. Monger, who was his nephew, in which the agreement alleged in the bill of complaint was made, and that the instrument was delivered to defendants pursuant to such agreement.

Some time in the spring of 1944, defendants moved to the premises, which were then occupied by plaintiff, and established their home with him. Defendant Grace Monger performed the usual duties of a housewife, and her husband, the other defendant, assisted by plaintiff, cultivated the farm and raised certain crops, the money from which was used for living expenses, the purchase of tools, and other items incident to the operation of the home and farm. The record indicates that defendants cared for plaintiff as a member of their household, and paid certain doctor bills incurred by him. On behalf of plaintiff it was claimed on the trial that the agreement was not fully performed by defendants, in that plaintiff was forced to pay some of his medical bills and other expenses. Friction developed, particularly between plaintiff and defendant Grace Monger, and in August, 1948, defendants left the premises, moving back to their former home in Indiana. This suit was started shortly thereafter.

In their answer to the bill of complaint defendants denied that there was any agreement whereby they were obligated to care for the plaintiff or to pay any of his expenses, medical or otherwise. They also filed a cross bill in which they averred that in 1918 defendant Dwight M. Monger was the owner of a one-third interest in certain real estate which he conveyed to plaintiff by a quitclaim deed. It was further alleged that Dwight M. Monger was at the time a minor, and that the deed was executed and delivered by him in reliance on plaintiff's promise to reconvey to the grantor on the latter's release from the United States army. The cross bill charged that plaintiff refused to make such reconveyance on demand, and also refused to account for any rents or profits from the land. Defendants asked that plaintiff be required to render an accounting of such rents and profits and also the proceeds of the property,

which, it appears from the proofs, was sold by plaintiff for $300 on the 11th of August, 1919, approximately a year after its conveyance to him. The cross bill averred that the actual consideration for the deed which plaintiff seeks to have set aside in the instant suit was the obligation resting on him because of the transactions in 1918 and 1919.

In his testimony on the trial plaintiff admitted the conveyances referred to in the cross bill, but in effect denied any obligation on his part, moral or otherwise, with reference thereto. He claimed further that the money received by him was given in equal shares to plaintiff's sister, a niece, and his nephew, the defendant. The latter denied that he had received any part of the proceeds of the sale. The answer to the cross bill denied the right of cross-plaintiffs to relief thereunder, and by amendment subsequently filed the statute of limitations was pleaded as a bar to any claim that plaintiff's obligation arising out of the previous transactions was the consideration for the deed by plaintiff to defendants.

The principal question at issue in the case is whether the record sustains plaintiff's claims that defendants undertook and promised to care for him for the balance of his life, that such undertaking was the consideration for the delivery of the deed, and that defendants breached the contract. This involves a consideration of the testimony as to what was said between plaintiff and his nephew prior to the delivery of the instrument in suit. The former testified as follows:

"*Q.* Tell the court as nearly as you can remember the substance of that conversation; tell what you said to him and what he said to you as nearly as you can remember.

"*A.* I told him I couldn't work the place and if he would come and work it I would let him have the farm when I was done with it. I had the deed all

made out and give him the deed and told him if he wanted to go and have it recorded, and he done that.

"*Q.* What, if anything, did you say about what he would do, or they do, for you, whether or not you were going to live there?

"*A.* Yes.

"*Q.* What did you say about it?

"*A.* I told him they were to keep me, pay my doctor bills and bury me; that is all I wanted out of the place. After we talked about it and he said, 'Well, I would like this another way, we will work the farm 1/3 each, that is 1/3, each take 1/3.' I said, 'No, I don't want it that way, all I want out of it is my living, doctor bills and my burial, and you can do whatever you have a mind to that way.' He said all right that would be all right with them.

"*Q.* Then what did you do?

"*A.* Then he went and I done that, partly done that.

"*Q.* What did you do then when he said all right that is satisfactory to me, what did you do, give him the deed?

"*A.* I give him the deed and he took it over and had it recorded.

"*Q.* What else, if anything, was said about the proposition other than what you have already told; anything else said that you can remember on that occasion?

"*A.* No, I don't think so, not that I remember just now.

"*Q.* Mr. Monger took the deed from you?

"*A.* Yes.

"*Q.* And you delivered it to him on that occasion?

"*A.* Yes.

"*Q.* And the following month in June it was recorded?

"*A.* Yes."

Defendant Dwight M. Monger undertook to testify that it was his understanding that the deed was given to him and his wife because of the prior transactions

referred to in the cross bill. Objection was interposed and the answer of the witness was stricken. The record does not indicate that he undertook to state the actual conversation between himself and his uncle with reference to the matter.

Defendants rely on the testimony of Elizabeth Grimm, a sister of defendant Grace Monger, who claimed that in August, 1947, plaintiff stated to her in substance that his conscience had been bothering him because he had failed to "do right by Dwight," that he was giving him his farm, and that he had no one else "to leave it to anyway." Defendant Grace Monger testified that she heard this conversation, and in substance she corroborated her sister, claiming further that plaintiff stated "he had made out the deed to the farm to Dwight to repay." Plaintiff denied making any statements of the character testified to by Mrs. Grimm and Mrs. Monger.

We find nothing otherwise in the record suggesting that plaintiff at any time considered that he was obligated, either legally or morally, to his nephew because of the transactions in 1918 and 1919. The averments of the cross bill suggest that he had expressly refused to recognize any such obligation. It may be noted also that the alleged statements to which defendant Grace Monger and her sister testified were made over 4 years after the preparation of the deed in suit, and that the testimony of Mrs. Grimm does not indicate that plaintiff stated he had executed his conveyance to defendants because he considered he was indebted to his nephew. Neither is any reason suggested why plaintiff felt impelled to advise Mrs. Grimm as to the reason or reasons for the conveyance.

The record in the case does not sustain any possible claim that appellants are entitled to the affirmative relief sought by their cross bill, based on the transactions in 1918 and 1919. It is unnecessary to

consider whether at the time Dwight M. Monger's demand for a reconveyance was refused any right of action, legal or equitable, existed in his favor against the plaintiff. The statute of limitations* would bar recovery in any action at law, and application of the doctrine of laches would accomplish the same result in an equitable proceeding. No reasons excusing delay have been shown, or suggested, on behalf of appellants. In *Moross* v. *Oakman,* 257 Mich 464, it was said:

"Where one invokes the aid of equity, after apparently sleeping on his rights for a time equal to the statutory period of limitations, he must allege facts which excuse the delay and show strong equities in his favor. *Campau* v. *Chene, supra* (1 Mich 400); *Abbott* v. *Godfroy's Heirs,* 1 Mich 178, 182; 1 Am St Rep 788, 789, note; *Hays* v. *Port of Seattle,* 251 US 233 (40 S Ct 125, 64 L ed 243); *Bradfield* v. *Dewell,* 48 Mich 9."

See, also, *Olitkowski* v. *St. Casimir's Savings & Loan Assn.,* 302 Mich 303; *Newton* v. *Security National Bank of Battle Creek,* 324 Mich 344.

Counsel for appellants argues in his brief that the court may inquire into the real consideration for the deed, and that any testimony tending to show such consideration is competent. It is insisted that appellants were entitled to assert, and to show if possible, that the prior transactions referred to were the real consideration for the deed by plaintiff to defendants. The record indicates that when the prior conveyances, executed in 1918 and 1919 respectively, were offered in evidence, counsel for plaintiff made an objection based on the statute of limitations. However, the testimony was not excluded, but was received by the court subject to such objection. In consequence, it appears in the record,

---

* See CL 1948, § 609.13 *et seq.* (Stat Ann § 27.605 *et seq.,* Stat Ann 1949 Cum Supp § 27.605.)

and may be given the consideration to which it is entitled. Defendants were not prejudiced by the ruling of the trial court.

The burden of proof rested on plaintiff to establish the material allegations of his bill of complaint. The trial court affirmatively found that the agreement claimed by him had been made, and that the defendants had breached it. This being an equity suit, we hear it *de novo,* but in so doing give due consideration to the factual findings of the trial judge. *Zak* v. *Gray,* 324 Mich 522. He had the advantage of seeing the witnesses in court and listening to their testimony as they gave it. We are not persuaded that we would have reached a different conclusion had we occupied his position. The testimony of the plaintiff and the defendants was in direct conflict. In consequence, the determination of the factual issues depends on the weight to be given to the testimony of the parties. The fact that defendants moved into plaintiff's home, and that the parties lived together there over 4 years in the manner disclosed by the proofs, tends to corroborate plaintiff's claim as to the alleged contract. From the record before us, we find that the trial judge reached the correct conclusion with reference to the agreement between the plaintiff and the defendants for the support of the former. We also find that the consideration for the delivery of the deed was the agreement for care and support.

Defendants further contend that the proofs in the case fail to substantiate plaintiff's claim that the agreement was breached by them. The trial court determined the issue in plaintiff's favor. The record indicates that plaintiff was not in good health, that he was of advanced years, and at times irritable. However, defendants knew the situation at the time they went into his home to care for him. There was much unfortunate bickering, principally concerning

trivial matters.   The record fully substantiates the conclusion that the defendants did not give to plaintiff the care and consideration to which he was entitled.

It is obvious that defendants became dissatisfied with the situation.   As a result they advertised for sale certain farm equipment that had been purchased, disposed of it, packed their belongings, and returned to Indiana.   Plaintiff was not advised of their intentions until shortly before they left the home.   They removed and apparently took with them an electric pump which had supplied the home with water, and plaintiff testified that he was forced to depend on his neighbors for his water supply.   He was at the time in ill health, and a niece and her husband moved into the home to be with him.   Defendants did not thereafter assist plaintiff in any way, nor does it appear that they offered to do so.   The conclusion of the trial court that defendants had broken their agreement was clearly supported by the proofs.   *Smith* v. *Jackson,* 239 Mich 197; *Heinig* v. *Crosier,* 247 Mich 137.

Defendants also contend that relief to plaintiff, if granted, should be conditioned on compensating them for the improvement of the property by expenditures from their own funds.   The proofs, however, do not show the extent to which the value of the property was enhanced because of the alleged improvements.   The nature and extent thereof are not shown by the proofs.   Apparently the trial court did not consider the claim, nor are we impressed that the case was tried in such manner as to make it a specific issue.   A basis for compensation to defendants not having been established, it may not be granted.

The decree of the trial court is affirmed, with costs to plaintiff.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.