## SEGUIN v. MADISON.

1. EQUITY—SETTING ASIDE DEEDS—DELAY—CHANGE OF CIRCUMSTANCES—LACHES.

Plaintiff children were guilty of laches in waiting some 35 years after releasing father as guardian of their estates before seeking to set aside deeds whereby property upon which their mother had started to foreclose a second mortgage before her death was purchased at foreclosure sale by their father in his individual capacity while acting as administrator of mother's estate and later had the title transferred to himself and defendant, his second wife, before he died, property was platted in part, lots were sold and defendant invested some of her own funds in the making of improvements on it, and plaintiffs were experienced in real estate transactions

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—FRAUD—LACHES.

Determination as to whether there was fraud and deceit on part of deceased father of plaintiffs is not made, where it appears plaintiffs were guilty of laches in seeking to have deeds to which he was a party set aside many years after they were executed.

3. EQUITY—EQUITY COURTS ACCEPT STATUTE OF LIMITATIONS.

Courts of equity accept statute of limitations as fixing proper period of repose for rights in equity and apply it unless suit is peculiarly equitable in nature or compelling equities are shown.

4. SAME—LACHES—EXCUSE OF DELAY.

One invoking the aid of equity, after apparently sleeping on his rights for a time equal to the statutory period of limitations must allege facts which excuse the delay and show strong equities in his favor.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–7] 19 Am Jur, Equity, § 489 et seq.
[1–5] 9 Am Jur, Cancellation of Instruments, § 45.
[3] 19 Am Jur, Equity, § 500.
[6, 8] 1 Am Jur, Accounts and Accounting, § 56.

5. SAME—LACHES—EXCUSE—PLEADING.

An allegation in 1949 bill to set aside deed recorded in 1911 and others subsequently executed that plaintiffs did not discover the facts "until lately" is too general and indefinite to show absence of laches.

6. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—LACHES.

A court of equity will not permit accounts to be overhauled in favor of a party who has slept upon his rights, without just cause, for a great number of years; and more especially as against the representatives of a party who may be supposed to have had the means of defense in his lifetime, but who may have left his successors without the requisite vouchers.

7. EQUITY—MAXIM AS TO VIGILANCE.

The law assists those who are vigilant, not those who sleep upon their rights.

8. ACCOUNTING—LACHES.

No inflexible rule can be prescribed as to the lapse of what period of time shall disentitle a suitor to an account and each case must be controlled by its own peculiar circumstances, but a decree should be denied in every case where it clearly appears the party seeking it has, by his laches, rendered it impossible for the court to do full justice to both parties, whether the infirmity of the case consists in the death of a party, loss of evidence, or other cause.

Appeal from Alcona; Dehnke (Herman), J. Submitted June 6, 1950. (Docket No. 10, Calendar No. 44,702.) Decided October 2, 1950.

Bill by Sylvia Seguin and another against Mabel Madison to set aside deeds and for accounting. Decree for defendant. Plaintiffs appeal. Affirmed.

*Fixel & Fixel* (*James J. Lieberman* and *Harry N. Deyo,* of counsel), for plaintiffs.

*Donald K. Gillard* (*Moll, Desenberg & Purdy,* of counsel), for defendant.

CARR, J. Plaintiffs brought suit in equity in the circuit court of Wayne county to establish an interest in certain land in Alcona county, asking also for general relief. Subsequently the case was transferred to the Alcona county circuit court where it was heard and determined. Certain material facts involved in the controversy are established by the pleadings or by the proofs. The mother of the plaintiffs, Mary Madison, died September 3, 1910. Prior thereto, in connection with the settlement of a will contest, she became the owner of a mortgage on which foreclosure proceedings were pending at the time of her death.

Following the death of Mrs. Madison the father of the plaintiffs, Charles Madison, was, on the 5th of October, 1910, appointed administrator of the estate. In such capacity he continued the foreclosure suit, which culminated in the entering of a decree and the sale of the property. On such sale Charles Madison, acting in his individual capacity, was the highest bidder and became the purchaser of the property. The commissioner's deed recited payment of the purchase price by Mr. Madison in the sum of $1,046.80, and further stated that the sale was subject to a mortgage on the property, held by another party and bearing date March 8, 1909. The amount of such mortgage was not stated. The commissioner's deed was recorded December 2, 1911.

At the time he bid in the property in question, and also when the deed was executed and delivered to him, Charles Madison was the guardian of the property of the plaintiffs, who were minors, having been so appointed by the probate court of Alpena county on September 12, 1910. Thereafter, under date of April 24, 1914, each plaintiff signed an acknowledgment that the guardian had accounted for and paid over all moneys and effects which had come into his care and custody as such guardian, and releasing

him from all liability in such capacity. The acknowledgments and releases were addressed to the judge of probate of Alpena county, and requested him to enter an order cancelling the bond and letters of the guardian and releasing him from all liability and responsibility in connection therewith. Each acknowledgment and release was captioned in the probate court of said county and was executed in the presence of the judge of probate and of another witness. Appended to the acknowledgment and release executed by plaintiff Seguin, then Sylvia Madison, was a receipt for $410 for money paid to her by the guardian. A like receipt signed by Arthur E. Madison recited the payment to him of the sum of $310. At the time of the transactions the plaintiffs were respectively 23 and 24 years of age.

The record before us indicates that in connection with the administration of the estate of Mary Madison appraisers were duly appointed, qualified, and returned an inventory of assets. The total appraised value of such assets was approximately $1,-200. It was dated September 23, 1910, and filed shortly thereafter. It does not appear that further proceedings were taken in the matter until after the death of Charles Madison, which occurred October 10, 1948. A petition was filed by plaintiffs herein on May 13, 1949, praying that the defendant in the instant case, Mabel Madison, as executrix or special administratrix of the estate of Charles Madison, render an accounting of the estate and effects of Mary Madison. An order was entered on such petition, and apparently the matter is now pending before the probate court of Alpena county.

The bill of complaint filed by the plaintiffs alleged in substance that it was the duty of their father, acting as guardian of their respective estates, to protect their interests, that in consequence he should have bid in the property for them at the foreclosure sale,

and that as administrator he stood in a fiduciary relationship to them and to the estate of their mother, of such nature as to require him to bid in the property at the sale for the estate, to the end that plaintiffs might benefit.

Plaintiffs further set forth in their averments that they had no knowledge of the situation until after the death of Charles Madison, and that the latter was guilty of fraud and deceit because of his failure to advise them of the facts in connection with the transaction. They further stated that their father, after obtaining title to the property in question, was married to the defendant, and that in 1914, as well as on a subsequent occasion, by conveyances duly recorded in the office of the register of deeds of the county, he placed the title to the land in the names of himself and defendant, jointly. The prayer for relief asked that the commissioner's deed be reformed in such manner as to transfer title to the estate of Mary Madison, that the conveyances creating an estate by the entireties in their father and the defendant be set aside, and that defendant Mabel Madison be decreed to have no right, title or interest, in the property.

A motion to dismiss the bill of complaint was denied, and defendant filed an answer alleging, with other special defenses, that plaintiffs had been guilty of laches. Following a hearing in circuit court at which both plaintiffs testified, the trial judge came to the conclusion that the defense of laches was well founded, that plaintiffs had not used due diligence to discover or enforce their alleged rights, and that in consequence they were precluded from seeking relief in equity. A decree was entered accordingly dismissing the bill of complaint, but without prejudice insofar as the matters at issue were within the jurisdiction of the probate court of Alpena county

in the matter of the estate of Mary Madison. From such decree the plaintiffs have appealed.

It is contended by appellants that their father breached his fiduciary obligations to them by taking title in his own name to the property bid in at the foreclosure sale, and that he was also remiss in his duties in not specifically advising them with reference to the transaction. The right to the relief sought is predicated on the theory of fraud and deceit. As witnesses in the case the plaintiffs denied that they knew of the existence of the mortgage or of its foreclosure. They further claimed that they did not understand when they released their father from further obligations as the guardian of their estates that they were doing more than acknowledging the receipt of the money paid to them. As before noted, they were 23 and 24 years of age at the time, and the execution of the papers was witnessed by the probate judge.

Notwithstanding the manner and form in which the releases were executed, plaintiffs insist that they thought they were merely signing receipts for money received from the sale of wheat that they had helped to raise. It is their further claim that they continued in complete ignorance of the situation of which they now complain until after their father's death. Then they procured an attorney and caused an investigation to be made as to what rights they might have in the property in question. There is no showing, however, that at the time they launched their investigation plaintiffs had information in addition to that possessed by them during the period from 1914 to 1948. If they had launched their inquiry during such period it is probable that Charles Madison, who was, of course, more conversant with the transaction than any other person, would have explained why he bid in the property in his own name rather than for the plaintiffs or for the estate.

We find in the record no satisfactory explanation for the delay continuing until death had rendered it impossible for the father to explain his acts. It may be noted that there is no showing in the record as to the assets in the respective estates of the plaintiffs at the time of the foreclosure sale. Neither have the plaintiffs shown that had the property been purchased for them or for the estate the result would have been to their benefit. As before noted, title to the property was taken by Charles Madison subject to another mortgage, the amount and date of maturity of which are not shown.

It is doubtful whether the record before us indicates fraud and deceit on the part of Charles Madison. It is, however, unnecessary to determine that question. The trial court dismissed the bill of complaint on the ground that the plaintiffs were guilty of laches, and we think that he was correct in doing so. The conveyances with reference to the property were matters of record, and plaintiffs, had they desired to do so, might have ascertained at any time the situation with reference to the title. It should be noted in this connection that plaintiffs were not without experience in business matters. Arthur Madison worked in a real estate office in Detroit for many years, and had platted a subdivision there. The husband of the other plaintiff was also engaged in the real estate business, and plaintiff worked in his office. The situation with reference to the guardianship proceeding, and the administration proceeding relating to their mother's estate, might have been ascertained at any time by consulting the probate records. The conclusion of the trial judge that plaintiffs failed to use due diligence to ascertain their rights was fully justified by the pleadings and the proofs in the case.

In *Moross* v. *Oakman,* 257 Mich 464, it was said:

"A bill in equity must state the facts entitling plaintiff to relief. In the instant case an action at law for fraud or to recover real estate would be barred by the statute of limitations. Courts of equity accept the statute as fixing a proper period of repose for rights in equity as well as at law and apply it unless the suit is peculiarly equitable in nature or compelling equities are shown. *Campau* v. *Chene,* 1 Mich 400; *Michigan Insurance Co.* v. *Brown,* 11 Mich 265; *Smith* v. *Davidson,* 40 Mich 632; *Young* v. *Young,* 200 Mich 236; 17 RCL, p 735 *et seq.;* 21 CJ, p 251; *Lockwood* v. *Beckwith,* 6 Mich 168 (72 Am Dec 69).

"Where one invokes the aid of equity, after apparently sleeping on his rights for a time equal to the statutory period of limitations, he must allege facts which excuse the delay and show strong equities in his favor. *Campau* v. *Chene, supra; Abbott* v. *Godfroy's Heirs,* 1 Mich 178, 182; 1 Am St Rep 788, 789, note; *Hays* v. *Port of Seattle,* 251 US 233 (40 S Ct 125, 64 L ed 243); *Bradfield* v. *Dewell,* 48 Mich 9.

"The allegation that plaintiff did not discover the facts 'until lately' is too general and indefinite to show the absence of laches. *Hays* v. *Port of Seattle, supra.*"

Likewise in *Deitz* v. *Deitz,* 298 Mich 253, the Court quoted with approval from *Stout* v. *Seabrook,* 30 NJ Eq 187, 190, 191, as follows:

" 'A court of equity will not permit accounts to be overhauled in favor of a party who has slept upon his rights, without just cause, for a great number of years; and more especially as against the representatives of a party who may be supposed to have had the means of defense in his lifetime, but who may have left his successors without the requisite vouchers. * * * The justice of this doctrine is obvious. He who delays asserting his rights until the proof

in vindication of them is so indeterminate that it is very difficult to decide whether what seems to be justice to him is not injustice to his adversary, ought to lose all right to the aid of a court of conscience, for, by his laches, the path of justice has become so obscure that it cannot be traced with certainty. The law assists those who are vigilant, not those who sleep upon their rights.

"'No inflexible rule can be prescribed as to the lapse of what period shall disentitle a suitor to an account.   *   *   *   Each case must be controlled by its own peculiar circumstances; but I think it may be laid down as a safe general rule that a decree for an account should be denied in every case where it clearly appears the party seeking it has, by his laches, rendered it impossible for the court to do full justice to both parties, whether the infirmity of the case consists in the death of a party, loss of evidence, or other cause.'"

See, also, *Olitkowski* v. *St. Casimir's Savings & Loan Assn.*, 302 Mich 303; *Gustin* v. *Alpena Power Co.*, 307 Mich 241; *Newton* v. *Security National Bank of Battle Creek*, 324 Mich 344; *Monger* v. *Monger*, 327 Mich 306.

It is not disputed that plaintiffs knew that their father and stepmother were exercising dominion over the property and claimed to be the owners during a period of approximately 35 years. During that time a part of the property was platted, lots were sold, and several cottages built by the purchasers. The evidence is also undisputed that the defendant expended money of her own in the making of improvements. The plaintiffs were sufficiently familiar with the property to be charged with knowledge of what was taking place with reference to it. Under all the circumstances of the case their attempt to invoke the aid of a court of equity came too late. They must be left to such relief as may be afforded them in the probate proceedings.

The decree of the trial court is affirmed, with costs to defendant.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.